Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI, LLP**
Counsel to the Petitioning Creditor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                    Involuntary Chapter 7
KOREAN RADIO BROADCASTING, INC.,          Case No. 19-46322 (ESS)

                          Alleged Debtor.
-----------------------------------------------------------x

## PETITIONING CREDITOR'S OBJECTION TO ALLEGED DEBTOR'S MOTION TO DISMISS INVOLUNTARY BANKRUPTCY PETITION

TO:     THE HONORABLE ELIZABETH S. STONG
          UNITED STATES BANKRUPTCY JUDGE

          Petitioning Creditor Multicultural Radio Broadcasting, Inc. ("MRB"), by and

through its undersigned counsel,[1] as and for its objection to the motion (the "Motion") of the

Alleged Debtor, Korean Radio Broadcasting, Inc. ("KRB"), seeking entry of an Order, pursuant

to §§ 305, 307 and 707 of Title 11 of the United States Code (the "Bankruptcy Code") and 28

U.S.C. § 1331(c), dismissing this involuntary chapter 7 bankruptcy proceeding with prejudice,

respectfully states as follows:

---

[1] The firm of Smith, Gambrell & Russell, LLP was also counsel to Korean Radio Broadcasting, Inc. in the State Court proceedings, which resulted in entry of a judgment against KRB in the amount of $1,061,374.05 on March 20, 2019. On August 5, 2019 KRB and NY Metro Radio Korea, Inc. ("NY Metro Radio") jointly signed an Assignment for the Benefit of Creditors to William J. Brandt, Jr., a copy of which is attached to the accompanying declaration of Douglas J. Pick (the "Pick Aff.) as *Exhibit "B"*. It has not been disclosed as to who continues to pay the firm's legal fees in opposing the filing of the Involuntary Petition.

## PRELIMINARY STATEMENT

1.    As more fully discussed herein, as it was expressly authorized to do under

§ 303 of the Bankruptcy Code[2], MRB commenced this involuntary chapter 7 case as a result of

KRB's and its non-debtor affiliate NY Metro Radio Korea Inc.'s ("NY Metro Radio" and,

together with KRB, the "Assignors") execution of a joint Assignment (the "Assignment") for the

Benefit of Creditors (the "ABC")[3] appointing William A. Brandt, Jr. as assignee (the

"Assignee")[4] and the Assignee's ensuing "race" to sell all of the Assignors' assets to an entity

controlled by insiders for a *de minimis* sum and with no apparent efforts to market or solicit

competing offers for the assets and no apparent investigation of the two estates.[5] Indeed, the

---

[2] Specifically, § 303(h)(2) of the Bankruptcy Code expressly authorizes the entry of an order for relief against a debtor in an involuntary case if "within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession."

[3] As stated in *Brunner v. Estate of Lax*, 47 Misc.3d 1206(A); 2015 N.Y. Misc. LEXIS 985 at **19-20 (2015) (emphasis in original):

> A general assignment for the benefit of creditors is an assignment by a debtor transferring all of his or her property in general terms to an assignee in trust for all creditors of the debtor, or a voluntary transfer by a debtor of all his property to a trustee of his own selection, for administration, liquidation, and equitable distribution among his creditors." *Compagnia Distribuzione Calzature v. PSF Shoes*, 206 A.D.2d 343, 344, 613 N.Y.S.2d 931 (2d Dept. 1994); *City of New York v. United States*, 23 F.2d 829, 831-32 (2d Cir. 1960). "The intent of the Debtor and Creditor Law, as stated, is to obtain expeditious finality and payment to creditors of obligations and debts due them from the estate of the Assignor." *Speciner v. Chase Manhattan Bank*, N.A., 103 Misc. 2d 19, 20, 425 N.Y.S.2d 242 (Sup. Ct., Queens County, 1980).
>
> A general assignment "is distinguishable from a federal bankruptcy proceeding in that no discharge from the assignor's debtor is obtainable in an assignment for the benefit of creditors." *Freeman v. Marine Midland Bank-N.Y.*, 419 F. Supp. 440, 447 (E.D.N.Y. 1976); N.Y. Jur.2d Creditor § 215 (2001) ("[A] general assignment may be viewed as a quasi-bankruptcy proceeding except for the fundamental factor of discharging a debtor from his debts"). Because a general assignment does not result in the discharge of the assignor's debtors "[t]he creditor is not estopped from exhausting his legal remedies against the assignor." *Swift & Co. v. Novotny*, 28 N.Y.S.2d 562, 563 (Co. Ct., Westchester County 1941); *see also Delta Trading Corp. v. Kohn & Son Co.*, 28 Misc. 2d 894, 215 N.Y.S.2d 607 (Sup. Ct., N.Y. County 1961), *Kay Mfg. Corp. v. Weiss*, 11 Misc. 2d 164, 168 N.Y.S.2d 330 (Sup. Ct., Kings County 1957) (emphasis added); *see also Silver v. Whitney Partners LLC*, 2013 N.Y. Misc. LEXIS 6261, 2013 WL 6921992, at *2-3 (Sup. Ct., N.Y. County 2013) (same).

[4] It is noteworthy that the Motion was filed by KRB and not by the Assignee nor has the Assignee joined in the Motion.

[5] On September 19, 2019, the Assignee moved in the Supreme Court of the State of New York, Queens County (the "State Supreme Court"), by Order to Show Cause, for an Order: (i) commencing an Assignment for the Benefit of Creditors for the Assignors; (ii) authorizing and directing the Assignee to post a provisional bond of $50,000; (iii)

apparent purpose of the ABC (and the likely outcome thereof if this involuntary bankruptcy proceeding is dismissed or suspended) is to permit the Assignee to transfer all assets of both Assignors to a new company controlled by the Assignors' insiders on a rush basis with the "blessing" of a non-bankruptcy court order, while simultaneously ignoring improper liens placed upon the assets by insiders, and to otherwise allow the Assignee to administer the ABC seemingly at the whim and direction of the Assignors' insiders.[6] Nevertheless, in support of the Motion, KRB would now have this Court believe that MRB's actual motivation in commencing this case was to simply enforce the money judgment that it holds against KRB,[7] *i.e.*, that KRB is using this Court as a "court of collection", such that this Court should override KRB's statutory rights under § 303 of the Bankruptcy Code so as to permit the continuation of the ABC.[8] KRB conveniently ignores the fact that it had filed a jointly signed Assignment consolidating KRB with NY Metro Radio, making this more than simply a two-party dispute.

2.    Attached as *Exhibit "4"* to the Assignee's State Court Motion (*see Exhibit "C"* to the Pick Decl.) is a copy of a Consolidated Balance Sheet of the two Assignors dated

---

approving the retention of Archer & Greiner, P.C. as the Assignee's general counsel *nunc pro tunc* to August 16, 2019; (iv) approving the retention of Development Specialists, Inc. as the Assignee's financial advisor *nunc pro tunc* to August 14, 2019; (v) establishing an October 31, 2019 deadline for filing proofs of claim and approving the form and manner of notice thereof; and (vi) approving bidding procedures and liquidation sale for the assets of the Assignors (the "Assignee's State Court Motion"). The Assignee's State Court Motion was returnable on October 22, 2019. KRB filed the involuntary petition on October 21, 2019. Copies of the Assignee's State Court Motion and MRB's opposition thereto are attached as *Exhibits "C"* and *"E"* to the Pick Decl.

[6] The Assignee received a "retainer" of not less than $75,000 from an undisclosed third party (*see* ¶ 9 to the ABC; *Exhibit "B"* to the Pick Decl.), of which he paid $35,000 to his own company, Development Specialists, Inc. ("DSI") (*see* ¶ 42 to *Exhibit "C"* to the Pick Decl.) and paid $40,000 to Archer & Greiner, P.C., as his counsel. (*See* ¶ 29 to *Exhibit "E"* to the Pick Decl.) There has been no disclosure of any signed retention agreement.

[7] Pursuant to an Order for Judgment dated March 20, 2019, MRB holds a judgment against KRB in the amount of $1,061,374.05 (the "Judgment"). The Order for Judgment (*see Exhibit "I"* to the Pick Decl.) was entered by the Superior Court of New Jersey, Law Division, Hudson County, in an action titled *Multicultural Radio Broadcasting, Inc. v. Korean Radio Broadcasting, Inc. and Young Dae Kwon*, Docket No.: HUD-L-2082-17 (the "State Court Action"). A Transcript of the Judgment was filed in New York County on August 22, 2019 and thereafter in Queens County on September 4, 2019. (*See Exhibit "K"* to the Pick Decl.)

[8] KRB makes no contention whatsoever that all of the statutory elements of a meritorious involuntary chapter 7 bankruptcy filing stated under § 303 of the Bankruptcy Code have been satisfied by MRB. Rather, KRB merely contends that this Court should dismiss or suspend the involuntary case, pursuant to § 305 of the Bankruptcy Code, in favor of the ABC.

August 14, 2019, showing not less than six (6) unsecured claimants of the two Assignors, as follows:

| Name | Amount | Relationship |
|------|--------|--------------|
| MRB | $1,061,374.05 | Judgment Creditor |
| Sound of Long Island, Inc. | $440,000.00 | Time Brokerage Agreement proposed to be assigned and paid by the Purchaser |
| FOC Real Estate Corp. | $351,195.00 | FOC Real Estate Corp. is an affiliated entity that holds title to the building occupied by the Assignors. Upon information and belief, Mr. Kwon (the President of the Assignors) has an ownership interest in this entity. |
| Ballard Spahr LLP | $6,860.00 | Undisclosed |
| Sung and Rhee, CPA | $3,600.00 | Undisclosed |
| Best Pro USA, Inc. | $800.00 | Undisclosed |

3.    Respectfully, and as hereinafter discussed, KRB has failed to demonstrate that the dismissal of the involuntary case is warranted under the facts and circumstances. The entry of an Order for Relief under chapter 7 of the Bankruptcy Code and the administration of KRB's estate by a Chapter 7 Trustee under the supervision of this Court would better serve the interests of all of KRB's (and NY Metro Radio's) creditors than would the continuation of the ABC.[9]

## **BACKGROUND**

4.    The following is a brief chronology of the events leading up to the filing of the Assignee's Motion in State Supreme Court and the subsequent filing of the Involuntary Petition:

---

[9] KRB's statement that MRB has acknowledged that it is the only creditor of KRB is incorrect. As discussed above, the extent of KRB's liabilities is currently unclear. In this regard, the Assignee's State Court Motion reflects five (5) other unsecured creditors of the two (2) Assignors, including $440,000.00 allegedly owed to Sound of Long Island, Inc., the Licensee of the Time Brokerage Agreement with 87.7 FM. and $351,195.00 owed to *FOC Real Estate Corp.*, the Landlord of the Premises. Sound of Long Island owns the radio station 87.7 FM. FOC Real Estate is an affiliated entity owned by Young Dae Kwon (the President of the two Assignors), which leases the Premises to the Assignors.

| Date | Event |
|------|-------|
| May 18, 2017 | MRB files a complaint against KRB and Young Dae Kwon for, among other things, Breach of Contract. |
| February 4-February 20, 2019 | Jury Trial is held. |
| February 20, 2019 | Jury returns a verdict in favor of MRB and against KRB for $962,000.00 |
| March 11, 2019 | *FOC Kwon Equity LLC* (an affiliated entity owned by Mr. Young Dae Kwon) and Eun Jae Kwon (Mr. Kwon' wife)[10] file UCC-1 financing statements in Queens County asserting a security interest in all of the assets of NY Metro Radio. |
| March 20, 2019 | State Court issues an Order for Judgment in favor of MRB and against KRB for $1,061,374.05 |
| August 5, 2019 | KRB and NY Metro Radio jointly execute an Assignment for the Benefit of Creditors to William A. Brandt, Jr., Chairman of Development Specialists, Inc. ("DSI") and is paid a $75,000 "retainer". |
| August 14, 2019 | Mr. Brandt signs the Assignment but does not file it. |
| August 14, 2019 | The Assignee retains DSI as his financial advisor and pays DSI a $35,000 retainer. |
| August 16, 2019 | The Assignee retains Archer & Greiner, P.C. as his counsel and pays Archer & Greiner a $40,000 retainer. |
| August 22, 2019 | A transcript of the Judgment is filed in New York County. |
| September 4, 2019 | A transcript of the Judgment is filed in Queens County. |
| September 18, 2019 | Dela Dover LLC,[11] an affiliated entity, signs an Asset Purchase Agreement with the Assignee to acquire the assets of both Assignors for $50,000.00. |
| September 19, 2019 | The Assignee files the Assignment in Queens County. |

---

[10] Eun J. Kwon is scheduled as holding a 15% ownership interest in the Assignors. Young Dae Kwon, the President of the Assignors, is scheduled as holding a 27.4% ownership interest in the Assignors. Mr. Young Dae Kwon and Ms. Eun J. Kwon are husband and wife, who together own 42.4% of the Assignors. Others with ownership interest in the Assignors are (i) Heejin Kim (15%), daughter of Mr. Young Dae Kwon and Ms. Eun J. Kwon, (ii) Jun Sunwoo (15%), brother-in-law to Mr. Young Dae Kwon and brother to Ms. Eun J. Kwon and (iii) Seung Yong Hwangpo, who has a 24.5% interest in the Assignors.

[11] Upon information and belief, Dela Dover LLC is a Single Purpose Entity incorporated for the sole purpose of acquiring the assets (*i.e.*, all pre-paid customer accounts) and assuming the Time Brokerage Agreement signed by NY Metro Radio (Programmer) and Sound of Long Island, Inc. ("Licensee") relating to 87.7 FM. There is no disclosure as to when Dela Dover LLC was incorporated, who its members are and how or when it was funded and by whom. The Manager of Dela Dover LLC who signed the Asset Purchase Agreement is reflected as Seung Yong Hwangpo.

| Date | Event |
|---|---|
| September 19, 2019 | The Assignee files an Order to Show Cause (the "State Court Motion") seeking "immediate judicial review" and hearing on the State Court Motion. |
| October 16, 2019 | Counsel to the Assignee issues a letter to Mr. and Mrs. Kwon acknowledging two Promissory Notes and two Security Agreements, each dated February 28, 2019, for $1,132,884.26 and $240,000.00, respectively, in favor of the secured lenders. (*See Exhibit "G"* to the Pick Decl.)[12] |

5.     MRB, a New Jersey corporation, is a licensee of a radio station known as WWRU-AM 1660 located in Jersey City, New Jersey ("AM 1660"). MRB entered into a Time Brokerage Agreement dated November 5, 2013 with KRB by which MRB agreed to sell time to KRB (on AM 1660) to broadcast certain Korean language programming and for the sale of advertisements (as part of its programming).

6.     In November, 2014 Mr. Kwon advised MRB of an intention not to pay any further monthly fees to MRB and to move its broadcasting to a new station, 87.7 FM pursuant to a new Time Brokerage Agreement. While KRB moved to and operated at 87.7 FM effective January 1, 2015, NY Metro Radio signed the Time Brokerage Agreement with Sound of Long Island, Inc.[13]

7.     KRB failed to pay the contractual monthly airtime fee of $156,000 that was due in January 2015 and each month thereafter. In January 2015 KRB moved its broadcasting to 87.7 FM and presumably stopped paying Sound of Long Island, Inc. any airtime

---

[12] According to Schedule "A", entitled "Creditor List", a copy of which is attached as *Exhibit "4"* to the Assignee's State Court Motion (*see Exhibit "C"* to the Pick Decl.), the secured debts have been significantly reduced to $1,002,884.72 owed to Eun Jae Kwon and $40,000 owed to FOC Kwon Equity LLC, presumably as of August 5, 2019 (the date of the Assignment).

[13] The Assignee proposes to assign the Sound of Long Island Time Brokerage Agreement to Dela Dover LLC, an affiliated entity. Mr. Seung Yong Hwangpo signed the Asset Purchase Agreement as Manager of Dela Dover LLC. Mr. Hwangpo is scheduled as holding a 24.5% interest in the Assignors (*see Exhibit "4"* to the Assignee's State Court Motion; *Exhibit "C"* to the Pick Decl.).

fee (*i.e.*, Sound of Long Island, Inc. is scheduled as owed $440,000.00).[14] As a result of the foregoing, KRB intentionally defaulted under the November 5, 2013 Time Brokerage Agreement, which resulted in the commencement of the State Court Action on May 18, 2017. The Complaint was tried in front of a jury from February 4, 2019 through February 20, 2019, resulting in a jury verdict in favor of MRB.

   8. On March 11, 2019 at 9:00 a.m. FOC Kwon Equity LLC and Eun Jae Kwon, by their counsel, Miae Park, Esq., filed UCC financing statements with the New York Secretary of State asserting secured liens of against all of the assets of NY Metro Radio. (*See* Pick Decl. at *Exhibit "L".*) No UCC-1 financing statements were filed against the co-Assignor, KRB.

   9. On March 20, 2019, judgment was entered in favor of MRB and against KRB in the amount of $1,061,374.05 (*see Exhibit "I"* to the Pick Decl.). On August 22, 2019 a Transcript of the Judgment was filed in the New York State Supreme Court and, thereafter, on September 4, 2019 a Transcript of the Judgment was filed in Queens County (*see Exhibit "K"* to the Pick Decl.).

   10. In the interim and on August 5, 2019, NY Metro Radio and KRB jointly executed an Assignment for the Benefit of Creditors in favor of William A. Brandt, Jr. The Assignment was signed by Mr. Brandt on August 14, 2019 but inexplicably not filed with the Queens County Court until September 19, 2019, the same day that the Assignee's State Court Motion was filed with the Court. Upon information and belief the Assignors have been and are

---

[14] Upon information and belief, KRB continues to conduct business but now under the name "NY Radio Korea". (*See Exhibits "J"* and *"H"* to the Pick Decl.) There is no disclosure provided as to who is collecting the advertising fees from the website for radio programming nor what expenses are being paid and by whom.

continuing in business notwithstanding the execution of the Assignment and have been and are continuing to broadcast from 87.7 FM and collecting advertising fees.[15]

        11.    On October 16, 2019 counsel to the Assignee issued a letter to Eun Jae Kwon, individually, and to Young Dae Kwon, as Managing Members of FOC Kwon Equity LLC (*see Exhibit "G"* to the Pick Decl.), providing, in part, as follows:

> Dear Ms. Kwon and Mr. Kwon:
>
>     We are counsel for William A. Brandt, Jr., in his capacity as the Assignee of NY Metro Korea Inc., a New York corporation, and Korean Radio Broadcasting Inc., a New York corporation. A general assignment for the benefit of creditors proceeding was commenced pursuant to Article 2 of New York Debtor & Creditor Law (the "NYYDCL") by Order to Show Cause dated September 19, 2019, which is pending in Queens County Supreme Court under Index No. 716083/2019.
>
>     NY Metro Radio Korea Inc. is the borrower pursuant to a Promissory Note dated February 28, 2019 in the principal amount of $1,132,884.26 in favor of Eun Jae Kwon. NY Metro Radio Korean, Inc. is the Debtor pursuant to a Security Agreement (Chattel Mortgage) dated February 28, 2019 with Eun Jae Kwon, as Secured Party, which secures the payment of indebtedness sin the amount of $1,132,884.26.
>
>     NY Metro Radio Korea Inc. is the borrower pursuant to a Promissory Note dated February 28, 2019 in the principal amount of $240,000.00 in favor of FOC Kwon Equity LLC. NY Metro Radio Korean, Inc. is the Debtor pursuant to a Security Agreement (Chattel Mortgage) dated February 28, 2019 with FOC Kwon Equity LLC, as Secured Party, which secures the payment of indebtedness in the amount of $240,000.00.
>
> \*\*\*

---

[15] Section 15 of the Debtor and Creditor Law provides that:

    *The court shall have the power*:

        \* \* \*

    2. To authorize the business of assignor to be conducted for limited periods by the assignee, if necessary in the best interests of the estate, and allow additional compensation for such services.

Contrary to Section 15 of the New York Debtor and Creditor Law, the Assignee has never made any application to the State Supreme Court for authorization to conduct the continued operations of the Assignors.

This confirms that Eun Jae Kwon and FOC Kwon Equity LLC, as lenders and secured parties, agree and consent to the relief requested in the *Petition for an Order: (I) Commencing an Assignment for the Benefit of Creditors for NY Metro Radio Korea Inc. and Korean Radio Broadcasting Inc.; (II) Authorizing and Directing Assignee to Post a Provision Bond; (III) Approving the Retention of Archer & Greiner, P.C. as the Assignee's General Counsel Nunc Pro Tunc; (IV) Approving the Retention of Development Specialists, Inc. as the the Assignee's Financial Advisor Nunc Pro Tunc; (V) Establishing the Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof; and (VI) Approving Bidding Procedures and the Liquidation Sale for the Assets of the Assignors* (the "Petition"), and the *Affidavit of William A. Brandt, Jr.* in support of the Petition. This acknowledgment will be filed as part of the Court record in support of the Petition.

12.     MRB objected to the Assignee's State Court Motion because of the lack of transparency and lack of full disclosure, including, but not limited to:

(a)     There was no explanation provided as to why a single joint Assignment was executed as opposed to two separate Assignment proceedings. It is respectfully submitted that the joint Assignment improperly consolidated the assets and liabilities to the detriment of creditors. By way of example, MRB holds a judgment only against KRB and not NY Metro Radio. The two alleged liens that were filed by FOC Kwon Equity LLC and Eun Jae Kwon are only against the assets of NY Metro Radio and not KRB. It was not disclosed as to which entity signed the lease with FOC Real Estate Corp.

(b)     The executed Assignment was and is defective (*see Exhibit "B"* to the Pick Decl.). The jointly signed Assignment failed to itemize what the business purpose of each entity is. NY Metro Radio and KRB appear to be separate entities, *i.e.*, NY Metro Radio was incorporated on January 27, 2004 and KRB was incorporated on December 23, 2008. Both entities are listed as "Active Corporations" (*see* Exhibit 1 to the Assignee's State Court Motion; *Exhibit "C"* to the Pick Decl.) and, accordingly, presumably file separate tax returns and have separate business purposes and separate creditors. Section 3 of the New York Debtor and Creditor Law expressly provides as follows:

> Every conveyance or assignment made by a debtor of his estate, real or personal, or both, to an assignee for the creditors of such debtor, shall be in writing, *and shall specifically state therein the residence and kind of business carried on by such debtor at the time of*

9

> *making the assignment*, and the place at which such
> business shall then be conducted, and if such place be
> in a city, the street and number thereof, and if in a
> village or town such apt designation as shall
> reasonably identify such debtor. (Emphasis added.)

(c)   The Motion failed to disclose what marketing efforts, if any, were made
by the Assignee to obtain higher and/or better offers and/or why the sale
was pursued presuming that all of the assets are secured by Ms. Kwon and
FOC Kwon Equity LLC. There is no explanation as to what benefits, if
any, would be generated from the proposed sale, except to try to insulate
any future collateral attack on the sale. Curiously, in fact, the retainer paid
to the Assignee exceeds the proposed sale price of all of the corporate
assets.

(d)   There was no explanation as to why the Assignment was signed on
August 5, 2019 by the two Assignors (Young Dae Kwon, as President of
NY Metro Radio and as President of KRB[16]) but not signed by the
Assignee until August 14, 2019 and not filed until September 19, 2019. It
appears that, notwithstanding having signed the Assignment, the
Assignors have been operating *and continue to operate without oversight
of any kind.* There appears to be no new bank account opened by the
Assignee, no new books and records maintained by the Assignee and no
oversight as to income and the expenses paid out by the Assignors.

(e)   The Assignment provides that a "$75,000 retainer" was paid by someone
to the Assignee. A copy of the retention agreement was not provided.

(f)   The Motion seeks to sell all of the assets of the two Assignors to an insider
of the Assignors, Seung Yong Hwangpo, who holds a 24.5% equity
interest in the Assignors and had signed the APA as Manager of Dela
Dover LLC. Curiously, the "Purchased Assets" include all cash ($18,885)
consumer cash refunds (amount not disclosed); consumer deposits
($116,639) and the accounts receivable ($225,698) of the Assignors and
includes the corporate records and the website.[17]   More specifically,
section 1.1 of the Asset Purchase Agreement provides for the sale of the
following assets for $50,000.00:

> [A]ll of the Assignors' right, title and interest in
> personalty and assets, whatsoever and wherever

---

[16] The Motion fails to address whether or not the Board of Directors of each entity approved the execution of the Assignment.

[17] Attached as *Exhibit "E"* to the Pick Decl. is a letter dated "September XX, 2019" signed by Mr. Brandt as Assignee of the two Assignors on the letterhead of DSI, which incorporates "a compilation of the scheduled Assets and Liabilities of the Companies as of the date of the Assignment . . . ." The compilation reflects total assets of $85,210 (inclusive of alleged reserves for bad debt of $161,373) and total liabilities of $3,013,596 but fails to reflect customer deposits of $116,**639**.

situated, which are now, or have ever been, used in connection with the operation of the Assignors' businesses, and which Purchased Assets include, *are not limited to,* all personalty and any interest therein exempt from execution, including all stock of merchandise, furniture and fixtures, equipment, rights under licenses and leases[18] and contracts to the extent assignable (*with any cure to be paid by the Purchaser*), copier (subject to security interest), book accounts, *books,* bills, accounts receivable, patents, copyrights, trademarks and trade names, URL's or related website rights, social media platforms, insurance policies, tax refunds, rebates, general intangibles, insurance refunds and claims, and choses in action that are legally assignable, together with the proceeds of any non-assignable choses in action that may hereafter be recovered or received by any one or more of the Assignors. The Purchased Assets shall include all items identified in the inventory filed by the Seller with the Court. Further, the Purchased Assets specifically include all claims for refunds or abatement of all excess taxes heretofore or hereafter assessed against or collected from any one or more of the Assignors by the United States or any of its departments or agencies, any state or local taxing authority and the Assignors each agree to sign and execute a power of attorney or other such document(s) as required to enable the Assignee to file and prosecute, compromise and/or settle all such claims before the respective taxing authority. Each Assignor agrees to endorse any refund checks relating to the prior operations of said Assignor's business and to deliver such checks immediately to the Seller. (Emphasis added.)

The Purchased Assets also include the assignment of the new Time Brokerage Agreement between Sound of Long Island, Inc. (identified as the Licensee) and NY Metro Radio (identified as the Programmer) relating to the radio station contract that NY Metro Radio signed when KRB defaulted under its contract with MRB and had moved its programming from AM 1660 to 87.7 FM. Upon close examination, this transaction actually provides for a conveyance of all assets of

---

[18] Presumably the acquiring entity will operate out of the same premises as the Assignors.

the Assignors to a new entity for no real consideration (with any sale proceeds to be paid to the insider secured claimants) and seeks the State Court's blessing to avoid the MRB Judgment and/or avoid a future collateral attack by MRB as constituting a fraudulent conveyance or a claim for successor liability.

      (g)    The Motion failed to explain what benefit, *if any can be found*, that the unsecured creditors will obtain if the two secured liens filed in March, 2019 (held by FOC Kwon Equity LLC and Eun Jae Kwon (insiders)) remain unchallenged.

      (h)    The Motion failed to address whether any investigation had been conducted as to whether or not the two alleged secured lenders, FOC Kwon Equity LLC and Eun Jae Kwon (who personally holds a 15% ownership interest in the Assignors), hold actual claims[19] and what actual consideration, if any, they gave in exchange for their simultaneously filed security interests. The Motion also failed to disclose the relationship between Eun Jae Kwon and Young Dae Kwon who are wife and husband, respectively, and who hold a 15% and 27.4% ownership interest in the Assignors. The Motion further fails to disclose how the money was used.

      (i)    The Motion also failed to disclose when, how and from whom the Assignee derived funds (total amount unknown) so as to allow the Assignee to pay counsel to the Assignee a retainer of $40,000 and to pay the Assignee's company, DSI, a retainer of $35,000. There is also no disclosure as to whether any other retainers and/or expenses were paid between August 5, 2019 and September 19, 2019 and/or by whom. As for example, Dela Dover LLC, the proposed purchaser, a special purpose entity, is represented by Klestadt Winters Jureller Southard and Stevens, LLP. It is not disclosed who paid their retainer.

    13.    On October 24, 2019 *The Korea Times*, a newspaper circulated in the Korean community, a copy of which is attached as *Exhibit "H"* to the Pick Decl., quoted a "KRB official" in addressing the filing of the Involuntary Petition, as follows:

    In this regards, one of KRB officials said that "since the company internally also had plans to clear up KRB corporation around November and operate radio station under a new corporation already, the involuntary bankruptcy petition this time has no significant meaning," and explained that "the broadcasting station

---

[19] Arguably, the claim of Eun Jae Kwon may actually constitute an equity contribution on account of her stock ownership.

is scheduled to continue to operate normally to listeners and sponsors should not be worried at all."

This official also added that, "Even if bankruptcy procedure takes place and KRB corporation disappears, the corporation contracted with FM 87.7 frequency is a different company so there are no issues with radio broadcasting."

## ARGUMENT

14.     MRB respectfully submits that an overview of the sale transaction establishes that the Asset Purchase Agreement provides no benefit to creditors and that the Assignment was executed only to ensure that MRB could not collect on its Judgment.  The New York Debtor and Creditor Law, irrespective of the parties' contractual bargain, clearly prohibits stripping a debtor of its assets in an attempt to become judgment-proof.  The fact that MRB holds a significant judgment that was filed in Queens County, 14 days before the execution of the Asset Purchase Agreement by an insider, provides actual context and an inference of *scienter* to reasonably infer the Assignors' motive to move assets out of reach of MRB and thus constitutes the existence of "badges of fraud." *See Uni-Rty*, 117 A.D.3d 427 at 428; *Wall St. Assocs.*, 257 A.D.2d 526 at 529; *see also 3 W. 16th St., LLC v. Ancona*, 2013 N.Y. Misc. LEXIS 4430, 2013 WL 5459456 at *2 (Sup. Ct. N.Y. Cty. 2013) ("[b]adges of fraud are circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent").

15.     MRB also respectfully submits that the proffered transaction providing for the sale of all corporate assets for $50,000.00 failed to provide "fair consideration," or, in fact, any consideration for the benefit of creditors. As stated in *Taberna Preferred Funding II, Ltd. v. Advance Realty Group LLC*. 45 Misc.3d 1204(A), 5 N.Y.S.3d 330 at ***35-36:

> "Fair consideration" is not only a matter of whether the amount given for the transferred property was a fair equivalent or not

disproportionately small, which the parties vigorously dispute, but whether the transaction is made in good faith, an obligation that is imposed on both the transferor and the transferee." *Sardis v. Frankel*, 113 A.D.3d 135, 141, 978 N.Y.S.2d 135 (1st Dept. 2014), *quoting CIT Group*, 25 A.D.3d at 303; *see Berner Trucking*, 281 A.D.2d at 925 ("Good faith is required of both the transferor and the transferee and it is lacking when there is a failure to deal honestly, fairly and openly").

Also, as stated in *3 W. 16th Street, LLC v. Ancona*, 2017 N.Y. Misc. LEXIS 4430 at *11-12:

> In addition, a transfer may be fraudulent even if the transferor receives fair consideration, as long as the transfer was made with the requisite intent to defraud, hinder, or delay. *Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995). Assuming that Ancona received fair consideration, a factual issue remains as to intent. Whether the transaction was attended by good faith is also a question. Where a corporate insider participates in both sides of the transfer and the insider controls the transferee, the transfer will be deemed to have been made in bad faith if made to a creditor's detriment (*Matter of Mega Personal Lines, Inc. v. Halton*, 9 A.D.3d 553, 555, 780 N.Y.S.2d 409 (3d Dept. 2004); *Matter of Superior Leather Co. v. Lipman Split Co.*, 116 A.D.2d 796, 797, 496 N.Y.S.2d 845 (3rd Dept. 1986)), even if the transaction involved the exchange of fair equivalents (*Matter of Sharp Intl. Corp. v. State St. Bank & Trust co.*, 302 B.R. 760, 799 (Bankr. E.D.N.Y. 2003), *aff'd* 403 F.3d 43 (2d Cir. 2005). Ancona transferred the property to entities in which he apparently exercises control. It appears that the transfers were made to reduce the chances of plaintiff's collecting the debt. Even if the exchanges were for fair equivalents, there is a question of fact as to bad faith.

16.     It is further respectfully submitted that a contract is unconscionable if the "inequality is so strong and manifest as to shock the conscience and confound the judgment of any person of common sense." *Sanfilippo v. Sanfilippo*, 137 A.D.3d 773, 774, 31 N.Y.S.3d 78 (2016). *See also Label v. Label*, 70 A.D.3d 898, 899, 895 N.Y.S.2d 192 (2010); *see Hof v. Hof*, 131 A.D.3d 579, 580, 16 N.Y.S.3d 569 (2015)).

17.     On the Petition Date (*i.e.*, October 21, 2019), KRB filed the involuntary bankruptcy petition with this Court thereby commencing this involuntary case. On November

13, 2019, KRB filed the instant Motion to Dismiss the Involuntary Petition. Neither the Assignee nor his counsel has filed anything in opposition to the Involuntary Petition.

**A. KRB Has Failed to Meet Its Burden of Demonstrating That Dismissal is Warranted**

18.     As KRB correctly notes in the Motion, § 707(a) of the Bankruptcy Code applies to requests to dismiss involuntary chapter 7 bankruptcy cases and which section provides, in relevant part, that "the court may dismiss a case under this chapter only after notice and a hearing and only for cause..." The enumerated grounds for "cause" set forth in § 707(a) of the Bankruptcy Code are illustrative, not exhaustive, of what may constitute cause for dismissal. *See, e.g., Smith v. Geltzer*, 507 F.3d 64, 72 (2d Cir. 2007); *In re Hull*, 339 B.R. 304, 307 (Bankr. E.D.N.Y. 2006). "Accordingly, courts must determine whether cause exists under Section 707(a) on a case-by case basis." *In re Aiello*, 428 B.R. 296, 299 (Bankr. E.D.N.Y. 2010) (citations omitted). The determination ultimately turns on the totality of the circumstances and, as such, a court has substantial discretion in determining a motion to dismiss under § 707(a). *Smith*, 507 F.3d at 72 ("[T]he determination of whether cause exists is 'committed to the sound discretion of the bankruptcy court.'") (*quoting Hull*, 339 B.R. at 307); *see also* 6 Collier on Bankruptcy § 707.03 (15th ed. rev. 2006) ("The court has substantial discretion in ruling on a motion to dismiss under section 707(a), and in exercising that discretion must consider any extenuating circumstances, as well as the interests of the various parties.").

19.     Turning to the instant case and for the following reasons, MRB respectfully submits that KRB has failed to meet its burden to demonstrate the existence of cause for the dismissal of this case:

(a)     Section 303(h) of the Bankruptcy Code provides that if there is an opposition to an involuntary petition, an order for relief may be entered if the court finds one of two things, *i.e.*, either that the debtor is generally not paying its debts as they come due (unless such debts are subject to a bona

fide dispute), or if, within 120 days prior to the filing of the involuntary petition, a custodian was appointed or took possession of the debtor's property.

(b)    The parties do not dispute that KRB and New York Metro Radio chose William A. Brandt, Jr. as joint Assignee of both KRB and New York Metro Radio and that Mr. Brandt has retained Development Specialists, Inc. ("DSI") to assist with his administration of the two Assignors. Mr. Brandt is the founder and Executive Chairman of DSI. Mr. Brandt has also retained Archer Greiner, LLP as his counsel. Thus there is no dispute that Mr. Brandt is the designated "custodian" appointed within the meaning of section 303(h)(2) of the Bankruptcy Code.

(c)    The parties do not dispute that MRB holds an undisputed claim of $1,061,374.05, and is the largest creditor of KRB and which claim has not been paid to date. Thus the Alleged Debtor is generally not paying its debts as they come due.

(d)    The parties do not dispute that the Petitioning Creditor has satisfied the requirement for the commencement of the involuntary case under section 303 of the Bankruptcy Code.

(e)    The parties do not dispute that the timeline set forth in paragraph 3 above, including that on the same day that the joint Assignment was filed (seeking *nunc pro tunc* relief to August 14, 2019, the date of the Assignment), the Assignee simultaneously filed an Order to Show Cause in the Assignment Proceeding seeking authorization to commence the Assignment Proceeding, to post a $50,000 bond and to sell all assets of the Assignors to Dela Dover, LLC.[20]

20.    MRB submits that the Assignment proceedings are tainted, including that Dela Dover LLC was created so as to strip the Assignors of all assets and give this newly found company (controlled by the insiders of the Assignors) all of the profits and assets of the Assignors to the detriment of the creditors of the two consolidated Assignors. MRB further submits that the sale of the new company was done without any negotiations with anyone else,

---

[20] Section 6 of the Debtor and Creditor Law provides as follows:

The assignee named in any such assignment shall, within thirty days after the date thereof, and *before he shall have any power or authority to sell, dispose of or convert to the purposes of the trust any of the assigned property*, enter into a bond to the people of the state of New York, in an amount to be ordered and directly by the judge . . . .

There is also no disclosure as to why a nominal $50,000 bond would suffice in this case.

without any marketing efforts, without any publication of the opportunity to buy the businesses or its assets, without any valuation of the businesses and without any input from the Assignee's professional advisors as to the value of the two Assignors (*i.e.*, the website[21]) as to the fairness of the deal and/or as to the value of the lease to the premises. Suffice it to say, a fiduciary for creditors has a duty to act diligently to maximize value for creditors and to make sure any sale is fair and on the proper terms, which is totally lacking here. It is respectfully submitted that here, the prior owners are being provided carte blanche to essentially steal the assets of the Assignors, without any real oversight.

21. In support of the Motion, KRB relies heavily on the Second Circuit's decision in *In re Murray*, 900 F.3d 53 (2d Cir. 2018), affirming the dismissal of an involuntary petition for cause under § 707(a) of the Bankruptcy Code. However, the facts and circumstances of the instant case are clearly distinguishable from those considered by the court in *In re Murray*. In *In re Murray*, the Second Circuit affirmed the Bankruptcy court's finding that the filing of the Involuntary Petition was a judgment enforcement tactic for a two-party dispute for which there were adequate remedies under state law with "no other creditors to protect." In that case there was no voluntary surrender of assets to an Assignee and no relinquishment of control of the Assignors. In that case, as opposed to the instant case, the Court found possible consequences for the alleged debtor, such as loss of credit standing, loss of the ability to transfer assets and/or loss to carry on business affairs, and possible public embarrassment, none of which apply here. In the instant case, the Assignors have decided that the appointment of a fiduciary to liquidate their respective assets is appropriate. The ultimate question is whether the Assignors have the right to "pay for and choose" their person of choice to liquidate their assets without consultation or input from MRB, its largest undisputed creditor or, if MRB opposes the Assignors' choice,

---

[21] Upon information and belief the Assignors transferred the website from KRB to "NY Radio Korea."

whether MRB can pursue an impartial party (an independent professional) that has not been paid a "retainer" by the Assignors and whose loyalty creates no appearance of conflict or impartiality. MRB submits that the actions of the Assignee, to date, reflect a total disregard of his fiduciary duties to creditors.

## B.    KRB Has Failed to Meet Its Burden of Demonstrating That Abstention is Warranted

22.    With regard to abstention, § 305(a)(1) of the Bankruptcy Code provides, in pertinent part, that:

> The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if –
>
> (1)    the interests of creditors and the debtor would be better served by such dismissal or suspension...

23.    The burden of proving that dismissal of a case under title 11 will "better serve" both the debtor and the creditors falls on the moving party. *See, e.g.*, *In re Compania de Alimentos Fargo*, 376 B.R. 427, 434 (Bankr. S.D.N.Y. 2007); *In re Paolino*, 49 B.R. 834, 835 (Bankr. E.D. Pa. 1985).    Additionally, abstention under § 305 of the Bankruptcy Code is considered an extraordinary remedy. *See, e.g., Fargo,* 376, B.R. at 434; *In re Schur Mgmt. Co., Ltd.,* 323 B.R. 123, 129 (Bankr. S.D.N.Y. 2005). Therefore, courts should be wary of adopting too broad a test for abstention. *See, e.g., Eastman v. Eastman,* 188 B.R. 621, 624–25 (B.A.P. 9th Cir. 1995) (the test under § 305(a) is not whether dismissal would prejudice the debtor or whether a balancing process favors dismissal, but whether the debtor and all creditors will be "better served" outside of bankruptcy).

24.    Courts considering abstention following an involuntary filing generally utilize one of two approaches. The first approach looks to whether: (1) the petition was filed by a

few recalcitrant creditors and most creditors oppose the bankruptcy; (2) there is a state insolvency proceeding or an out-of-court arrangement pending; and (3) the dismissal is in the best interests of the debtor and all creditors. *See, e.g., In re Short Hills Caterers, Inc.,* 2008 WL 2357860, 2008 Bankr. LEXIS 1726, at *11 (Bankr. D.N.J. June 4, 2008) (collecting cases); *GMAM Investment Funds Trust I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.),* 317 B.R. 235, 254 (S.D.N.Y. 2004); *In re Sherwood Enters., Inc.,* 112 B.R. 165, 167–68 (Bankr. S.D. Tex.1989).

25.     A second approach is more akin to a "totality of the circumstances" standard, and includes consideration of factors such as: (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive, out-of-court arrangement, which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought. *See, e.g., Short Hills Caterers,* 2008 WL 2357860, 2008 Bankr. LEXIS 1726, at *12–13 (collecting cases); *In re Monitor Single Lift I, Ltd.,* 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008) ("early cases" used three-factor test whereas recent trend is toward a consideration of at least seven factors); *In re Paper I Partners, L.P.,* 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002); *In re R & A Bus. Assoc Inc.,* 1999 Bankr. LEXIS 543 (Bankr. E.D. Pa.1999).

26.     Consideration of the facts and circumstances presented in this case confirms that KRB has failed to demonstrate any basis for relief under § 305(a)(1) under either of the aforementioned tests.[22]

27.     As for the three-factor test, there is no dispute that the Assignee has not opposed the involuntary petition, nor does he state the total number of creditors the Assignors actually have (the Assignee's compilation is unaudited).  Moreover, the Petitioning Creditor cannot objectively be cast as "recalcitrant" since it had only recently obtained its judgment when the Assignors raced to the courthouse and commenced the Assignment in order to stop MRB from pursuing its rights in State Court to enforce its judgment.  It is the Assignee who now seeks to dispose of the Debtor's assets and/or is taking other actions favorable only to the Assignors and/or its insiders.  Additionally, although the second factor of the analysis – the existence of the ABC – is satisfied, it is evident that the ABC will be administered by the Assignee (who appears far from disinterested) entirely for the benefit of the Assignors and not for the benefit of all of the Debtor's creditors.

28.     Far more important under the facts and circumstances presented is the question of whether dismissal of the involuntary case in favor of the ABC would be in the best interests of all creditors of the Debtor.[23]  Ultimately, this Court must determine whether the administration of an unsupervised state court liquidation proceeding administered by the Assignee, with seemingly unlimited discretion over the estate, would be more beneficial to all of

---

[22] KRB's arguments for permissive abstention pursuant to 28 U.S.C. § 1334(c) are largely duplicative of their contentions in support of abstention pursuant to § 305(a) of the Bankruptcy Code.  As such, said arguments are not being separately addressed by MRB.

[23] Although § 305(a)(1) references whether the interests of the debtor would be better served by dismissal or suspension of a bankruptcy case, the Debtor herein has no economic interest whatsoever in the outcome of the Motion as it has ceased its operations and, at the end of the day, the Debtor will be liquidated either in the ABC or in this involuntary case.  As such, the focus should be upon whether the ABC or this involuntary case would better serve the interests of the Debtor's creditors.

the Debtor's creditors than would a liquidation under the supervision of a disinterested Chapter 7 Trustee whose decision making would be overseen by this Court, the United States Trustee and the Debtor's creditors. Although it is not the Petitioning Creditor's burden to establish, it is apparent that the ABC is not in the best interests of all creditors.

29.     The sum of the Debtor's argument in support of his burden of demonstrating this factor is that: (i) the ABC is a less expensive and alternative means to equitably distribute the assets of the Alleged Debtor; (ii) that the ABC "has been pending for two months and the Assignee has made significant (progress) towards a sale; and (iii) the Petitioning Creditor is actively participating in these proceedings (*see* Dismissal Motion at p. 8). Specifically, the Assignee essentially contends that so much has been "accomplished" in the ABC that halting the ABC now would be catastrophic. The Assignee's contentions as to what has been "accomplished" in this regard actually raises many other questions and issues, including questions and issues concerning what was *not* accomplished or investigated by the Assignee, as more particularly set forth above.

30.     No reasonable explanation whatsoever has been provided as to why the Assignee is seemingly in such a rush to sell all of the assets to an insider (without any disclosure of that fact to the Queens County court) rather than going through a proper sale process on a normal schedule and after the "competing claims" to the assets is addressed. The only explanation is seemingly that the Assignors simply want to stop MRB in its tracks and strip the Assignors of all assets without any interference or independent oversight from a Chapter 7 Trustee or from other creditors of the Debtor. There is no reason proffered as to why the liquidation of assets could not be more efficiently and economically conducted by a Chapter 7

Trustee, particularly with the cooperation of a designated representative of the Debtor and/or the Assignee.

31.     It appears that the only possibility for the unsecured creditors to recover any money with regard to the amounts owed to them is from: (a) avoidance actions (including potential avoidance claims concerning the monies distributed from the loans of the secured lenders); (b) from a challenge to the secured creditors' assertion that they hold a lien against all assets of NY Metro Radio; (c) an independent investigation of the operations and management of the Debtor and NY Metro Radio; (d) an independent investigation as to where the income from the advertisements on the website and programming have gone; and/or (e) an action against the Assignee on his bond on the basis of his possible mishandling of the ABC.[24]  Notably, the Assignee essentially acknowledges that no identifiable funds will be available for creditors other than secured lenders, entirely ignoring any potential challenge of their secured status.

32.     In this regard, the entry of an Order for Relief in this involuntary case would serve the best interests of the Debtor's creditors by staying the Assignee from immediately selling all of the Debtors' assets.

33.     If the ABC is permitted to be continued, the Assignee appears to be poised to run roughshod over the assets of the Assignors in favor of the insiders and to be judge and jury as to any and all disputes.  Given that the Assignee holds its position only with the Assignors'

---

[24] KRB neglects to address whether any of the following tasks were taken by the Assignee immediately following his appointment: (a) securing the Debtor's bank accounts so that no pre-Assignment checks cleared and opening a new account in the Assignee's name; (b) opening a set of new books and records; (c) securing the Debtor's premises so as to preclude unauthorized access; (d) changing entry codes and safe combinations, if any; (e) securing the Debtor's computers, servers and books and records; (f) cataloging the inventory and equipment on hand and comparing it to the books and records of the Debtor to determine if any asset was missing or unaccounted for; (g) determining the actual value of the Debtor's intangible assets, equipment, accounts receivable, deposits, refunds, and the like; (h) opening new bank accounts; (i) obtaining court approval for the continuation of the business; (j) what oversight, if any, was implemented over the operations of the Assignors; (k) what investigation was conducted as to the alleged secured claims; and/or (l) what investigation was conducted relating the transfer of KRB's website.

consent and is being compensated by the Assignors, it is unlikely that the creditors will receive an unbiased hearing from the Assignee. The automatic stay is needed so as to permit the Petitioning Creditor and other creditors to protect their interests and conduct a thorough and fully transparent investigation of the estates.

34.     Additionally, KRB fails to make an adequate demonstration that relief under § 305(a)(1) of the Bankruptcy Code would be appropriate under the "totality of circumstances" analysis of the second test discussed above. *See, e.g., Short Hills Caterers, supra.* To the contrary, and again while it is not the Petitioning Creditor's burden to establish, all of the factors considered by courts under this analysis favor the continuation of this involuntary case as follows:

- Economy and efficiency of administration. A chapter 7 bankruptcy case can be administered more economically and efficiently than the ABC. As discussed above, the Assignee's appointment spanned only a short direction and was immediately challenged as to his impartiality and, as such, a Chapter 7 Trustee can quickly and economically be brought "up to speed", particularly with the input and assistance of a representative of the Debtor and/or the Assignee. Thereafter, a Chapter 7 Trustee can quickly and efficiently address the issues concerning a liquidation of the Debtor's assets and if NY Metro Radio is the alter ego of KRB (as it appears to have been already determined by the Assignee). Moreover, the costs to the estate concerning the amounts payable to the Assignee and/or other professionals have not been disclosed, quantified or compared to the fees and costs that might be incurred by a Chapter 7 Trustee. The costs are likely to be far higher in the unsupervised ABC than in a chapter 7 case supervised by the United States Trustee and this Court.

- Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court. Although the ABC is pending, and as discussed at length above, the continuation thereof would not serve to protect the interests of all creditors of the Debtor.

- Whether federal proceedings are necessary to reach a just and equitable solution. As discussed at length above, the automatic stay provided for under § 362(a) of the Bankruptcy Code is required in order to stay the Assignee's proposed sale of all of the assets of the two Assignors for less than fair consideration. Moreover, the appointment of an independent Chapter 7 Trustee under the Bankruptcy Code would be far more just and

equitable to the Debtor's unsecured creditors as opposed to the continuation of the ABC for the sole benefit of the principals of the Assignors.

- <u>Whether there is an alternative means of achieving the equitable distribution of assets</u>. Even at this early stage, KRB and the Assignee essentially acknowledge that there will be no distribution to unsecured creditors and that only the insiders (the secured lenders) will receive a distribution. Inasmuch as (i) the Assignors have consented to the Assignee's appointment and administration of the Debtor's estate in the ABC and (ii) the Assignee's stated belief that the secured lenders hold a first priority security interest in all of the assets of NY Metro Radio, it is very unlikely that the Assignee will undertake any meaningful examination of whether the asserted security interests should be challenged, whether any payments made to the secured lenders may be subject to avoidance as preferential transfers[25], or whether any action adverse to [the Assignors] should be taken if the ABC were permitted to continue.

- <u>Whether the debtor and the creditors are able to work out a less expensive, out-of-court arrangement, which better serves all interests in the case</u>. Again, the Debtor is not operating and will be liquidated, the only question being in what forum/context. As such, there is no possibility of any out-of-court arrangement being reached that would better serve all interests.

- <u>Whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process</u>. Again, the ABC was filed only recently in Queens County on September 19, 2019. A Chapter 7 Trustee would not be hard pressed to start the administration of the estate anew.

- <u>The purpose for which bankruptcy jurisdiction has been sought</u>. The Petitioning Creditor has sought a bankruptcy proceeding because it believes, and respectfully asserts, that it will afford it and other unsecured creditors of the Debtor a more fair, just and unbiased evaluation and treatment of their rights, claims and interests than they would in the context of the ABC.

---

[25] Again, while the Assignee may be empowered to pursue the avoidance and recovery of preferential transfers and fraudulent conveyances, such claims can be more efficiently pursued before this Court under the provisions of the Bankruptcy Code and under the supervision of this Court. It is unlikely that any potential avoidable transfers would be lost if the "look back" period commenced on the Petition Date rather than the date of the execution of the Assignment as the Assignee, presumably, did not make any payments to creditors of the Debtor on any antecedent debts prior to the Petition Date.

## CONCLUSION

30.     Based upon the foregoing, it is respectfully submitted that KRB has failed to demonstrate any meritorious basis for the relief requested in the Motion and, thus, the Motion should be denied in its entirety.

**WHEREFORE**, MRB respectfully requests that the Motion be denied and that it have such other and further relief as is just and proper, for all of which no other request has been made to any other court.

Dated: New York, New York
       December 1, 2019

                             **PICK & ZABICKI LLP**
                             Counsel to the Petitioning Creditor

        By:

                      Douglas J. Pick, Esq.
                      369 Lexington Avenue, 12th Floor
                      New York, New York 10017
                      T: (212) 695-6000
                      E: dpick@picklaw.net