**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------x
In re:

KOREAN RADIO BROADCASTING, INC.,

                        Alleged Debtor.
---------------------------------------------------------------------x

Chapter 7

Case No.: 19-46322-ess

**MEMORANDUM DECISION ON KOREAN RADIO BROADCASTING, INC.'S
MOTION TO DISMISS OR FOR ABSTENTION**

Appearances:

John G. McCarthy, Esq.
Smith, Gambrell & Russell, LLP
1301 Avenue of the Americas
21st Floor
New York, NY  10019
*Attorneys for Korean Broadcasting
Radio, Inc.*

Douglas J. Pick, Esq.
Pick & Zabicki LLP
369 Lexington Avenue
12th Floor
New York, NY  10017
*Attorneys for Multicultural Radio
Broadcasting, Inc.*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

On October 22, 2019, Multicultural Radio Broadcasting, Inc. ("MRBI") filed this involuntary petition for relief under Chapter 7 of the Bankruptcy Code against Korean Radio Broadcasting, Inc. ("KRBI").

Before the Court is a motion by KRBI asking this Court to dismiss or, in the alternative, to abstain in this involuntary Chapter 7 bankruptcy case pursuant to Bankruptcy Code Sections 707(a) and 305(a) and Judiciary Code Section 1334(c) (the "Motion to Dismiss or for Abstention"). The grounds for KRBI's motion are, in substance, that KRBI has already taken steps to address its situation by commencing an assignment for the benefit of creditors under Article 2 of New York's Debtor and Creditor Law, and that proceeding is presently pending in New York Supreme Court, Queens County (the "ABC Proceeding"). There, KRBI and another entity, NY Metro Radio Korea Inc. ("NY Metro" and, together with KRBI, the "Assignors") executed an assignment for the benefit of creditors to William A. Brandt, Jr. (the "Assignee"). As a consequence, KRBI argues, this involuntary Chapter 7 case is duplicative and serves no bankruptcy or other purpose.

The question posed by this Motion to Dismiss or for Abstention is whether this Court should decline to proceed in this involuntary bankruptcy case, in light of the standards for dismissal or abstention under the Bankruptcy Code and for permissive abstention under the Judiciary Code.

## Jurisdiction

KRBI's motion to dismiss the involuntary bankruptcy petition or, alternatively, for abstention arises under Bankruptcy Code Sections 305(a) and 707(a), and Judiciary Code Section

1334(c).  This Court has jurisdiction over this matter as a core proceeding pursuant to Judiciary

Code Sections 1334(b) and 157(b)(1), and the Standing Order of Reference dated August 28,

1986, as amended by the Order dated December 5, 2012, of the United States District Court for

the Eastern District of New York.  In addition, this Court has jurisdiction over this Motion to

Dismiss or for Abstention pursuant to Judiciary Code Section 157(b)(3).

**<u>Selected Background and Procedural History</u>**

The parties and their disputes have a long history leading up to the filing of this

involuntary Chapter 7 bankruptcy case, including business relationships, a federal district court

action and a state court action and two-week jury trial in New Jersey, and the pending ABC

Proceeding in Queens Supreme Court.  In order to provide some context for this Motion and

decision, certain of this background is summarized here.

*The Parties*

KRBI, the debtor in this involuntary Chapter 7 bankruptcy case, is a New York

corporation with a principal place of business in Queens County.  KRBI Motion to Dismiss or

for Abstention ("KRBI Mot.") ECF No. 11-1.  Together with NY Metro, it is engaged in the

business of supplying audio programming for the Korean community in New York City.

Affidavit of William Brandt, ECF No. 15, Exh. C at 9 ("Brandt Aff.").  Young Dae Kwon is the

principal of both KRBI and NY Metro, and he and his wife, Eun J. Kwon, hold a 42.4 percent

ownership interest in these entities.  Brandt Aff. Exh. C at 77.

NY Metro is not a debtor here.  Like KRBI, it is a New York corporation with a principal

place of business in Queens County.  *Id.*

That is, KRBI and NY Metro have common ownership, a common principal, and both are assignors in the ABC Proceeding pending in Queens Supreme Court.  But only KRBI is a debtor in this involuntary Chapter 7 bankruptcy case.

MRBI is a New Jersey corporation and licensee of a radio station known as WWRU-AM 1660 ("1660 AM"), located in Jersey City, New Jersey.  MRBI Objection to KRBI Motion to Dismiss or for Abstention ("MRBI Objection") ¶ 5, ECF No. 14.

On November 5, 2013, MRBI and KRBI entered into a time brokerage agreement (the "MRBI TBA") for the purposes of broadcasting a Korean language radio program on 1660 AM in 2014 and 2015.  KRBI Mot. at 2.  MRBI held the FCC licenses to broadcast on 1660 AM in the New York metropolitan area and owned the radio transmission site.  *Id.*

In November 2014, Mr. Kwon advised MRBI that it was KRBI's intent not to make any more payments to MRBI, and to move its broadcasting to a new station, 87.7 FM, pursuant to a new time brokerage agreement between NY Metro and Sound of Long Island, Inc.  KRBI Mot. at 3.  That agreement had an effective date of January 1, 2015.  MRBI Obj. ¶ 6.

Beginning in January 2015, KRBI did not pay the contractual monthly airtime fee of $156,000 as provided in the MRBI TBA to MRBI.  And in January 2015, KRBI moved its broadcasting to 87.7 FM.

*The New Jersey District Court and State Court Actions*

On March 17, 2015, MRBI commenced an action in the U.S. District Court for the District of New Jersey against KRBI and Mr. Kwon (the "District Court Action"), asserting claims for breach of contract, trade libel, and unjust enrichment.  KRBI Mot. at 2.  Diversity was the sole basis asserted for jurisdiction in the federal courts.  *Multicultural Radio Broadcasting Inc. v. Korean Radio Broadcasting, Inc.*, 2017 WL 436250, at *1 (D.N.J. Jan. 31, 2017).

In August 2016, MRBI filed a motion for leave to amend its complaint, and KRBI filed a cross-motion to dismiss the District Court Action for lack of subject matter jurisdiction and for judgment on the pleadings on count two of the complaint, the trade libel claim.

On January 31, 2017, the District Court entered a decision and order dismissing the District Court Action for lack of subject matter jurisdiction.  The District Court found, among other things, that MRBI did not establish that KRBI's corporate officers directed, controlled, or coordinated KRBI's activities from a location in New Jersey.  *Multicultural Radio Broadcasting, Inc.*, 2017 WL 436250, at *4; KRBI Mot. at 3.  The District Court also denied MRBI's request to amend the complaint to include a new federal cause of action because, among other reasons, the proposed amendment did not "simply cure a 'technical defect'; in [MRBI's] jurisdictional allegation and the proposed amendment could not create a retroactive basis for federal subject matter jurisdiction."  *Multicultural Radio Broadcasting, Inc.*, 2017 WL 436250, at *5.

More than three months later, on May 18, 2017, MRBI commenced an action in the Law Division of New Jersey Superior Court, Hudson County, against KRBI asserting claims for breach of contract, trade libel, unjust enrichment, interference with prospective economic advantage, breach of the implied covenant of good faith and fair dealing, and violation of the New Jersey Fair Trade Act (the "State Court Action").  MRBI Obj. ¶ 7.  *See also* MRBI State Court Complaint, ECF No. 15, Exh. E, p. 22 (listing MRBI's causes of action in the State Court Action).

From February 4, 2019 to February 20, 2019, a jury trial was held in the State Court Action.[1]  MRBI Obj. ¶ 7.  On February 20, 2019, the jury returned a verdict in favor of MRBI and against KRBI for breach of the MRBI TBA and awarded damages in the amount of

---

[1]  On February 3, 2019, MRB withdrew its trade libel claim.  KRBI Mot. at 3.

$962,000.  This sum represented the difference between the payments due under the MRBI TBA for 2015 and the amounts that MRBI was paid by another entity that broadcasted a Korean language radio program on 1660 AM.  KRBI Mot. at 4.  The jury also found in favor of MRBI on its claim for tortious interference with contract, and awarded damages of $100,000 to MRBI.  KRBI Mot. at 4.  KRBI prevailed on all other counts in the State Court Action.  And finally, the New Jersey Superior Court directed a verdict in favor of Mr. Kwon and dismissed all of the claims asserted against him.  KRBI Mot. at 4.

On March 11, 2019, FOC Kwon Equity LLC ("Kwon Equity"), an affiliated entity owned by Mr. Kwon, and Ms. Kwon each filed a UCC-1 financing statement in Queens County, asserting a security interest in all of the assets of NY Metro.  MRBI Obj. ¶ 8.

On March 20, 2019, the New Jersey Superior Court entered an Order for Judgment after trial in favor of MRBI and against KRBI in the amount of $1,061,372.05 (the "Judgment").  MRBI Obj. ¶ 9.

*The ABC Proceeding in Queens Supreme Court*

On August 5, 2019, the Assignors NY Metro and KRBI executed an assignment for the benefit of creditors (the "ABC") to the Assignee, who is the chairman of Development Specialists, Inc. ("DSI").  KRBI Mot. at 3.  On that same day, the Assignors paid a $75,000 retainer to the Assignee.  MRBI Obj. ¶ 12.

On August 14, 2019, the Assignee signed the ABC, retained DSI as his financial advisor, and paid DSI a $35,000 retainer.  MRBI Obj. ¶ 12.  Two days later, on August 16, 2019, the Assignee retained Archer & Greiner, P.C. as his counsel and paid the firm a $40,000 retainer.  MRBI Obj. ¶ 12.

On September 19, 2019, the Assignee commenced the ABC Proceeding by filing a petition in Queens Supreme Court.  In the petition, the Assignee states that he "intends to sell all of the Assignors' assets through a public auction sale or as otherwise ordered by the Court, pursuant to section 19 of the New York Debtor & Creditor Law."  Queens Supreme Court ABC Petition of William A. Brandt, ECF No. 15, Exh. B at 3.

On that same day, the Assignee filed an application for an order to show cause seeking: (i) the commencement of the ABC Proceeding; (ii) authorization and direction for the Assignee to post a provisional bond; (iii) approval of the retention of Archer & Greiner, P.C. as the Assignee's counsel; (iv) approval of the retention of DSI as the Assignee's financial advisor; (v) establishment of a deadline for filing proofs of claim and approval of the form and manner of the notice thereof; and (vi) approval of the bidding procedures and the liquidation sale of the assets of the Assignors (the "ABC OSC Request").  KRBI Mot. at 4.

The sale proposed by the Assignee includes an asset purchase agreement (the "APA") between the Assignee, on behalf of the Assignors, and Delta Dover LLC ("Delta"), which represents an opening or "stalking horse" offer to acquire the assets of the Assignees.  That offer is subject to any higher or better offer that may be made by a competing bidder in a public auction.  The APA provides that Delta will acquire all of the Assignors' assets, and assume all of the Assignors' liabilities.  These liabilities include payroll arrearage, vacation pay, prepaid advertising expenses, and lease payments under the MRBI TBA.  The APA also provides for the assignment of the time brokerage agreement with Sound of Long Island, Inc. to Delta.  MRBI Obj. ¶ 12.

That is, in the event that Delta is the successful bidder, the Assignee states that APA will result in an aggregate value of almost $800,000, including a payment of $50,000 in cash and the

assumption of KRBI's liabilities.  Declaration of William A. Brandt ("Brandt Decl."), ECF No. 18, at ¶ 14.  *See* KRBI Reply to the MRBI Objection ("KRBI Reply") at ¶ 8.

On October 21, 2019, MRBI filed opposition to the ABC OSC Request ("MRBI Opposition"), arguing, among other things, that the ABC Proceeding lacks both transparency and adequate disclosure.  MRBI Obj. ¶ 12; MRBI Opp. ¶ 9.  In particular, MRBI argues that the ABC Proceeding is improper because: (i) the Assignee does not explain why he filed a single ABC, consolidating the assets and liabilities of NY Metro and KRBI, rather than two separate ABC proceedings; (ii) the Assignee does not describe the business purpose of each of the entities, as required by Section 3 of New York's Debtor and Creditor Law; (iii) the Assignee does not disclose what marketing efforts were made to obtain higher and better offers for the sale of the assets outside of the APA; (iv) the Assignee does not provide a copy of the retention agreement or adequate information about the payment of the $75,000 retainer; and (v) the Assignee proposes to sell the Assignors' assets to an insider of the Assignors, Seung Yong Hwangpo, who holds a 24.5 percent equity interest in the Assignors and who signed the APA on behalf of Delta as its manager, all without providing any additional information about other potential purchasers. MRBI Obj. ¶ 12; MRBI Opp. ¶ 9.

*This Involuntary Chapter 7 Bankruptcy Case*

On October 22, 2019, MRBI filed this involuntary Chapter 7 bankruptcy case against KRBI.  That same day, the Court issued an involuntary summons on KRBI.  On October 24, 2019, MRBI filed an affidavit of service, stating that it served the involuntary summons on KRBI and the Assignee on October 23, 2019.  And on November 4, 2019, MRBI filed a letter with the Court entitled "Preservation Demand to Alleged Debtor," demanding that KRBI

preserve all physical documents, digital data, and all backup tapes or other archival media in the possession of KRBI during the pendency of this bankruptcy case.

*KRBI's Motion To Dismiss or for Abstention*

On November 14, 2019, KRBI filed this Motion to Dismiss or for Abstention.  KRBI argues that this Court should dismiss or abstain from considering this involuntary bankruptcy case because, among other reasons, there is already an ABC Proceeding pending in Queens Supreme Court in which MRBI has actively participated.  KRBI also argues that this bankruptcy case is no more than a two-party dispute in which MRBI is attempting to enforce its Judgment, rather than pursue its remedies in the state court proceeding.  And KRBI argues that the ABC Proceeding provides the Assignee with the ability to investigate any causes of action that KRBI may have, including possible fraudulent conveyance actions, just as a Chapter 7 trustee could do here.

For these and other reasons, KRBI argues that pursuant to Bankruptcy Code Sections 707(a) and 305(a), and Judiciary Code Section 1334, this bankruptcy case should be dismissed, or, in the alternative, the Court should abstain from hearing this case because under these circumstances, no bankruptcy purpose would be served by allowing it to proceed.

*MRBI'S Objection*

MRBI opposes the dismissal of this involuntary bankruptcy case.  On December 5, 2019, MRBI filed an objection to the Motion to Dismiss or for Abstention ("MRBI Objection") together with the declaration of its counsel and accompanying exhibits.  MRBI argues, in substance, that the ABC Proceeding is a woefully inadequate substitute for a Chapter 7 bankruptcy case in this Court.  MRBI asserts that the ABC Proceeding is "unconscionable" due to, among other things, a lack of transparency and the inadequate consideration for the sale of all

the Assignors' assets to a new entity that is effectively controlled by an insider.  MRBI also argues that the APA amounts to a fraudulent transfer under New York Debtor and Creditor Law, in that it is the post-judgment sale of KRBI's assets to an insider for minimal consideration.

Specifically, MRBI argues that in the ABC Proceeding, the Assignee does not explain what benefit the unsecured creditors will receive if the liens filed in March 2019 by insiders Kwon Equity and Ms. Kwon remain unchallenged, does not address whether any investigation has been conducted into whether Kwon Equity and Ms. Kwon hold valid secured claims and what consideration, if any, they gave in exchange for these claims, does not disclose how KRBI has used any funds that it received from Kwon Equity and Ms. Kwon, and does not disclose the relationship between Ms. Kwon and Mr. Kwon, who are married and hold 15 percent and 27.4 percent ownership interests respectively in the Assignors.

MRBI also argues that in the ABC Proceeding, the Assignee does not disclose when, how, and from whom he received the funds needed to pay retainers to his counsel of $40,000 and to his financial advisor of $35,000, and also fails to note whether any other retainers or expenses were paid between August 5, 2019 and September 19, 2019.

And MRBI argues that the proposed sale as described in the ABC Proceeding does not provide any benefit to creditors, and was commenced only to ensure that MRBI would not be able to collect on its Judgment.  It notes that the proposed sale of the assets of KRBI and NY Metro for just $50,000 is well short of adequate consideration for the benefit of creditors.

Additionally, MRBI argues that proceeding in this involuntary bankruptcy case is best for the parties because the ABC Proceeding is an unsupervised state court liquidation proceeding administered by the Assignee – and here, by contrast, a disinterested Chapter 7 trustee would be able to conduct a fair liquidation process.  MRBI states that it moved promptly to challenge the

Assignee's impartiality, and that a Chapter 7 trustee could swiftly be brought "up to speed." And thereafter, MRBI asserts, a Chapter 7 trustee could quickly and efficiently identify and address the issues surrounding a liquidation of KRBI's assets, including the determination of whether NY Metro is the alter ego of KRBI. MRBI states that the costs of proceeding in Chapter 7 would be lower as well.

*KRBI'S Reply*

On December 12, 2019, KRBI filed a reply to the MRBI Objection, together with the declaration of its counsel and accompanying exhibits. KRBI Reply, ECF No. 17.

KRBI replies, in substance, that the ABC Proceeding in Queens Supreme Court does not constitute a "race" to sell the Assignors' assets to an insider entity for a *de minimis* sum. KRBI also argues that the Assignee has determined that MRBI is the sole creditor of KRBI, even though MRBI suggested that there are at least six different creditors identified on the balance sheet in the consolidated ABC Proceeding.

KRBI also points out that under the APA, Delta is neither more nor less than a "stalking horse" bidder, and that its bid is subject to a public auction process and any higher and better offer. It notes that Delta's bid under the APA is worth almost $800,000, and that the $50,000 "price" is merely the cash portion of the consideration offered by Delta. And KRBI states that the APA and notice and bidding procedures have been submitted for review in the ABC Proceeding, and are subject to the approval of the Queens Supreme Court.

KRBI also disputes that it and NY Metro, as the Assignors, somehow improperly designated the Assignee, or that the Assignee somehow improperly selected DSI to serve as his financial advisor. KRBI notes that a general assignment for the benefit of creditors has been defined as a voluntary transfer by a debtor of all of its property, to a trustee of its own selection,

for administration, liquidation, and equitable distribution among its creditors.  And in this context, KRBI argues that DSI, even if the Assignee founded it, has the expertise, experience, and reputation necessary and appropriate to perform as the fiduciary to administer the estate of KRBI in the ABC Proceeding.

*Hearings on the Motion to Dismiss or for Abstention*

On December 16, 2019, the Court held a hearing on the Motion to Dismiss or for Abstention, at which KRBI, MRBI, and the Assignee appeared and were heard.  At the December 16, 2019 hearing, the Court adjourned the Motion to January 21, 2020 and directed MRBI, KRBI, and the Assignee to meet and confer on the relief requested.

On January 21, 2020, the Court held a continued hearing on the Motion to Dismiss or for Abstention, at which KRBI, MRBI, and the Assignee appeared and were heard, and a tentative date for an evidentiary hearing of January 23, 2020, was set.  Shortly before that date, the parties advised the Court by letter that they requested that the record be closed and the Court issue a decision.

And on March 30, 2020, the Court held a continued hearing on the motion, and issued a bench ruling dismissing this bankruptcy case pursuant to Bankruptcy Code Section 707(a), and in the alternative, abstaining from proceeding in this bankruptcy case pursuant to Bankruptcy Code Section 305(a) and Judiciary Code Section 1334(c).

## The Applicable Law

*Dismissal Pursuant to Bankruptcy Code Section 707(a)*

KRBI seeks dismissal of this involuntary Chapter 7 bankruptcy case under Bankruptcy Code Section 707(a).  The question of whether a bankruptcy case should be dismissed pursuant to Bankruptcy Code Section 707 is committed to the sound discretion of the court.  *In re Murray*,

543 B.R. 484, 492 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53, 58 (2d Cir. 2018).  This is true whether dismissal is warranted on a basis specified in the Bankruptcy Code, or on other grounds.  *Id.  See Clear Blue Water, LLC v. Oyster Bay Mgmt. Co.*, 476 B.R. 60, 67 (Bankr. E.D.N.Y. 2012) (observing that "[a] bankruptcy court has discretion to determine what additional circumstances, not enumerated in the statute, may constitute cause").

And cause, in turn, is a fact-specific inquiry.  As the Second Circuit has observed, "a variety of factors may be relevant, including the purpose for which the petition was filed and whether state proceedings adequately protect the parties' interests."  *In re Murray*, 900 F.3d 53, 60 (2d Cir. 2018).

In this Circuit, courts have considered several factors to determine if cause exists to warrant dismissal pursuant to Section 707(a) because, in effect, the case amounts to an improper or duplicative use of the bankruptcy system:

> (1) the bankruptcy court was the most recent battlefield in a long-running, two-party dispute,  (2) the judgment creditor brought the case solely to enforce a judgment, (3) there were no competing creditors, (4) there was no need for a pari passu distribution, (5) assuming there were fraudulent transfers to be avoided, the judgment creditor could do so in another forum, (6) the judgment creditor had adequate remedies to enforce its judgment under non-bankruptcy law, (7) the judgment creditor invoked the bankruptcy laws to secure a benefit that it did not have under non-bankruptcy law without a creditor community to protect, (8) no assets would be lost or dissipated in the event that the bankruptcy case did not continue and (9) the alleged debtor did not need a bankruptcy discharge.

*In re Murray,* 900 F.3d at 57.

And in the context of an involuntary bankruptcy case, courts may pay particular heed to whether the petitioning creditor is attempting to collect a debt in a two-party dispute and whether adequate state court remedies are available – and these considerations will "weigh[] in favor of dismissal when present."  *In re Murray,* 543 B.R. at 493.  *See In re Murray,* 900 F.3d at 61.

*Abstention Pursuant to Bankruptcy Code Section 305(a)*

KRBI asks this Court to exercise its discretion to abstain from hearing this involuntary bankruptcy case pursuant to Bankruptcy Code Section 305(a).  Section 305(a) provides that the court, "after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension."

Many considerations may guide a court in determining whether abstention is warranted. As summarized by one bankruptcy court, these include:

> (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Paper I Partners, L.P.,* 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002) (citing *In re RCM Global Long Term Capital Appreciation Fund, Ltd.,* 200 B.R. 514, 525 (Bankr. S.D.N.Y. 1996) (Brozman, C.J.) (adopting the seven-factor test as set out in *In re 801 South Wells Street Ltd. P'ship,* 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996)).

Courts in this Circuit have found that "'abstention pursuant to section 305 is an extraordinary remedy and is appropriate only in the situation where the court finds that both creditors and the debtor would be better served by a dismissal.'"  *In re Selectron Mgmt. Corp.*, 2010 WL 3811863, at *5 (Bankr. E.D.N.Y. Sept. 27, 2010) (quoting *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (S.D.N.Y. 2004)).  When seeking abstention pursuant to Bankruptcy Code Section 305, the moving party bears the burden to demonstrate that the

interests of the debtor and its creditors would benefit from dismissal.  *In re Selectron Mgmt. Corp.*, 2010 WL 3811863, at *5.

<u>Permissive Abstention</u>

KRBI, in the alternative, asks this Court to exercise its discretion to abstain from hearing this involuntary bankruptcy case under the permissive abstention provisions of the Judiciary Code.  Permissive abstention may be warranted "in the interest of justice, or in the interest of comity with State courts or respect for State law."  28 U.S.C. § 1334(c)(1).

In considering whether permissive abstention under Section 1334(c)(1) is appropriate, courts apply the following factors:

> (1) the effect or lack thereof on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6) the existence of a right to a jury trial, and (7) prejudice to the involuntarily removed defendants.

*In re Residential Capital, LLC,* 488 B.R. 565, 577 (Bankr. S.D.N.Y. 2013).  *See Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011) (same); *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC,* 396 B.R. 602, 607 (S.D.N.Y. 2008) (same).

In addition, and of note here, courts in this circuit "'have examined additional factors when considering permissive abstention,'" including the presence of a related proceeding commenced in state court or other non-bankruptcy court" and "'the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties.'"  *Little Rest Twelve, Inc.*, 458 B.R. at 60 (quoting *In re NTL, Inc.,* 295 B.R. 706, 717-18 (Bankr. S.D.N.Y. 2003)).

**Discussion**

To prevail on its request that this involuntary bankruptcy case be dismissed, KRBI must show that pursuant to Bankruptcy Code Section 707 or on other grounds, dismissal is warranted for cause.  Alternatively, to prevail on its request that this Court abstain from hearing this case, KRBI must show that, in substance, and based on the considerations articulated by courts in applying Bankruptcy Code Section 305(a) and Judiciary Code 1334(c), this case does not serve a bankruptcy purpose and should not proceed further in bankruptcy court.

The Court considers these requests for relief in turn.

*Whether KRBI Has Shown that Dismissal Is Warranted Pursuant to Bankruptcy Code Section 707(a)*

The Court first considers whether KRBI has shown that dismissal of this bankruptcy case is warranted under Bankruptcy Code Section 707(a).  As the Second Circuit and many courts have noted, this is a case-by-case and fact-specific inquiry aimed at discerning "the purpose for which the petition was filed and whether state proceedings adequately protect the parties' interests."  *In re Murray*, 900 F.3d at 60.  The Court considers certain of these factors below.

Whether the Bankruptcy Court Is the Most Recent Battlefield in a Long-Running, Two-Party Dispute

The first factor identified by the Second Circuit in *In re Murray* is whether this case is the most recent "battlefield," and the bankruptcy court the current venue, in a long-running, two-party dispute.  *In re Murray*, 900 F.3d at 57.

Here, the record shows that the dispute between MRBI and KRBI over the collection of KRBI's debt began back in 2014, when KRBI first indicated to MRBI that it did not plan to comply with the MRBI TBA.  This was followed first by the District Court Action commenced by MRBI in 2015, and then the State Court Action commenced by MRBI in 2017.  And that case

proceeded to a two-week jury trial in February 2019 and the entry of the Judgment in favor of MRBI in March 2019. Following the entry of the Judgment, KRBI and NY Metro commenced the ABC Proceeding in Queens Supreme Court, and soon thereafter, MRBI brought this involuntary bankruptcy case against KRBI.

That is, there can be no doubt that this bankruptcy case is the "most recent battlefield in a long-running, two-party dispute," and a dispute that has been before the state and federal courts in New Jersey and New York.

Accordingly, the Court finds that this factor weighs in favor of dismissal of this bankruptcy case.

Whether MRBI Brought this Involuntary Bankruptcy Case Solely To Enforce a Judgment

The second *Murray* factor is whether MRBI commenced this involuntary bankruptcy case for the sole purpose of enforcing its Judgment. *In re Murray*, 900 F.3d at 57.

Here, the record shows that the parties sharply dispute whether MRBI brought this case solely to collect on its Judgment against KRBI. KRBI argues that the ABC Proceeding provides MRBI – and any other creditor of the Assignors – an adequate, efficient, and transparent forum for the orderly sale of the Assignors' assets and the distribution of the proceeds to its creditors. MRBI responds that this Court, and a Chapter 7 bankruptcy case and trustee, offer a far superior process to marshal and sell KRBI's assets, for the benefit of KRBI's creditors. And MRBI questions the adequacy of the terms of the APA with the "stalking horse" bidder Delta.

There can be no doubt that MRBI seeks to recover on the Judgment through this involuntary bankruptcy case. But the record is far from clear as to whether this is the sole reason why it prefers to proceed in this Court, rather than in the ABC Proceeding pending in Queens Supreme Court.

Accordingly, the Court finds that this factor weighs neither in favor of nor against dismissal of this bankruptcy case.

Whether There Are No Competing Creditors

The third *Murray* factor is whether there are no competing creditors, so that a bankruptcy case is not necessary.  *In re Murray*, 900 F.3d at 57.

Here, the record shows that MRBI points to "not less than six (6) unsecured claimants of *the two Assignors*," including:

> (i) MRBI, Judgment Creditor, $1,061,374.05; (ii) FOC Real Estate Corp., FOC Real Estate Corp. is an affiliated entity that holds title to the building occupied by the Assignors upon information and belief, Mr. Kwon (the President of the Assignors) has an ownership interest in this entity, $351,195; (iii) Ballard Spahr LLP, Undisclosed, $6,860.00 (iv) Sung and Rhee, CPA, Undisclosed, $3,600; and (v) Best Pro USA, Inc., Undisclosed, $800.

MRBI Obj. ¶ 2.

But there is a difference between a creditor of *KRBI*, the sole alleged debtor here, and creditors of the Assignors *NY Metro and KRBI*.  The record shows that the Assignee has determined that MRBI is the sole creditor of KRBI.  Brandt Decl. ¶ 11.  And this is consistent with statements by MRBI's counsel to the effect that "[MRBI] is the largest and sole creditor (in fact a judgment creditor in the amount of $1,061,374.05) of [KRBI]."  E-mail from Douglas Pick to John McCarthy, Nov. 11, 2019, ECF No. 10-1.

Accordingly, the Court finds that this factor weighs in favor of dismissal of this bankruptcy case.

Whether There Is No Need for a Pari Passu Distribution

The fourth *Murray* factor is whether there is no need for a *pari passu* distribution to the creditors.  *In re Murray*, 900 F.3d at 57.

Here, as noted above, the record shows that there may be several creditors of the two Assignors, NY Metro and KRBI.  But as also noted above, there is a difference between a creditor of KRBI, the alleged debtor in this Chapter 7 bankruptcy case, and the creditors of NY Metro and KRBI, the Assignors in the ABC Proceeding.  And here, both the Assignee and MRBI's counsel have reached the conclusion and stated that MRBI is the "sole creditor" of KRBI.  *See* Brandt Decl. ¶ 11; E-mail from Douglas Pick to John McCarthy, Nov. 11, 2019.  As a consequence, there is no need for a *pari passu* distribution to KRBI's creditors.

Accordingly, the Court finds that this factor weighs in favor of dismissal of this bankruptcy case.

## Whether, Assuming There Are Fraudulent Transfers To Be Avoided, MRBI Can Do So In Another Forum

The fifth *Murray* factor is whether there is another available forum in which MRBI can seek the avoidance of any fraudulent transfers.  *In re Murray*, 900 F.3d at 57.

Here, the record shows that MRBI points to the terms of the APA, including the amount of cash consideration and the relationships among the principal of Delta and the Assignors, and questions whether they are fair and transparent.  MRBI also argues that the timing of the APA, just fourteen days after the entry of the State Court Judgment, indicates KRBI's intent to move assets out of MRBI's reach.

But MRBI does not point to any fraudulent transfers by KRBI that have occurred and could be avoided, nor does it point to any persuasive grounds to question the Assignee's ability to act as a fiduciary for the benefit of the creditors of both KRBI and NY Metro.  And even if the record did suggest the prospect of fraudulent transfers that could be avoided, MRBI has not shown why the Assignee in the ABC Proceeding would be unable to pursue such claims, or to

investigate any fraud or potential causes of action that KRBI may have for the benefit of creditors.

Accordingly, the Court finds that this factor weighs in favor of dismissal of this bankruptcy case.

## Whether MRBI Has Adequate Remedies To Enforce the Judgment Under Non-Bankruptcy Law

The sixth *Murray* factor is whether MRBI has adequate remedies under non-bankruptcy law to enforce the Judgment. *In re Murray*, 900 F.3d at 57.

Here, the record shows that New York state law, including the laws that govern the ABC Proceeding pending in Queens Supreme Court, provide a clear path to permit MRBI to recover and collect on the Judgment. While here too, MRBI questions whether the ABC Proceeding and the Assignee are adequate to this task and whether the APA and Delta's "stalking horse" bid are fair and transparent, MRBI has not supported those arguments with evidence that shows – or even suggests – that the ABC Proceeding is somehow inadequate, or the Assignee is somehow compromised, in fulfilling their roles.

Accordingly, the Court finds that this factor weighs in favor of dismissal of this bankruptcy case.

## Whether MRBI Invoked Bankruptcy Laws To Secure a Benefit That It Did Not Have Under Non-Bankruptcy Law Without a Creditor Community To Protect

The seventh *Murray* factor is whether MRBI commenced this involuntary bankruptcy case to secure a benefit under the Bankruptcy Code that it would not otherwise have under non-bankruptcy law, without a creditor community to protect. *In re Murray*, 900 F.3d at 57.

Here, as noted above, the record shows that while there are multiple creditors of the Assignors NY Metro and MRBI, MRBI is the sole identified creditor of KRBI. That is, the

record indicates that in this involuntary Chapter 7 bankruptcy case, there may well be no "creditor community" beyond MRBI to protect.

At the same time, it is far from clear that MRBI commenced this case in order to secure a benefit available to it under bankruptcy law that it would not have in the ABC Proceeding. While MRBI urges that a Chapter 7 trustee and this Court would be better able to oversee the orderly liquidation of KRBI's assets than the Assignee and Queens Supreme Court, that is more akin to a preference for one fiduciary and forum over another, rather than a benefit under bankruptcy law

Accordingly, the Court finds that this factor weighs neither in favor of nor against dismissal of this bankruptcy case.

<u>Whether Assets Will Be Lost or Dissipated in the Event that the Involuntary Bankruptcy Case Does Not Continue</u>

The eighth *Murray* factor is whether KRBI's assets will be lost or dissipated if this involuntary bankruptcy case does not proceed.  *In re Murray*, 900 F.3d at 57.

Here, the record shows that the NY Metro and KRBI have already commenced the ABC Proceeding, the Assignee's OSC Request awaits approval by the Queens Supreme Court, and the Assignee has retained experienced professionals.  The Assignee will have the court-supervised fiduciary duty to marshal the assets of the Assignors, to report to the court and could well investigate any fraud or other potential causes of action, and to liquidate and distribute those assets for the benefit of the creditors, including MRBI.  And while MRBI argues that the proposed sale of the Assignors' assets to Delta as set forth in the APA is for an inadequate price, that sale is subject to court-approved sales procedures and a public auction.  Simply put, the APA sets a floor, not a ceiling, for the value of the assets to be sold.

Accordingly, the Court finds that this factor weighs in favor of dismissal of this bankruptcy case.

Whether KRBI Does Not Need a Bankruptcy Discharge

The ninth *Murray* factor is whether KRBI does not need a bankruptcy discharge. *In re Murray*, 900 F.3d at 57.

Here, the record shows that KRBI is a corporation, and is not eligible to receive a discharge. As the Bankruptcy Code states, "[t]he court shall grant the debtor a discharge, unless . . . the debtor is not an individual." 11 U.S.C. § 727(a)(1).

Accordingly, the Court finds that this factor weighs in favor of dismissal of this bankruptcy case.

*          *          *

For these reasons, and based on the entire record, the Court finds that KRBI has shown that this involuntary bankruptcy case should be dismissed pursuant to Bankruptcy Code Section 707(a).

*Whether KRBI Has Shown that this Court Should Abstain Pursuant to Bankruptcy Code Section 305(a)*

The Court next considers whether KRBI has shown that this Court should abstain in this bankruptcy case pursuant to Bankruptcy Code Section 305(a). Here too, courts undertake a case-by-case and fact-specific analysis to determine whether "the interests of creditors and the debtor would be better served" by abstention, and the question of abstention under Section 305(a) is ultimately committed to the sound discretion of the bankruptcy court. 11 U.S.C. § 305(a)(1). Here, the Court looks to the factors adopted in *In re Paper I Partners, L.P.* and several other decisions within this Circuit as a guide.

Whether the Economy and Efficiency of Administration Favors Abstention

The first factor identified in *In re Paper I Partners* is the question of the economy and efficiency of administration of the Chapter 7 bankruptcy case, as contrasted with the alternative proceeding. *In re Paper I Partners,* 283 B.R. at 679.

Here, the record shows that the ABC Proceeding was commenced prior to this involuntary bankruptcy case, and both parties have appeared in that proceeding. An Assignee is in place, he has retained a financial advisor and counsel, and he awaits the approval of the state court to commence the orderly liquidation of the assets of the Assignors, NY Metro and KRBI. The record also shows that an agreement has been entered into with a "stalking horse" bidder – the APA – that assures a floor or minimum value to be obtained for those assets. That proposed sale is subject to higher and better bids at a public auction, and will be overseen by the Queens Supreme Court where the ABC Proceeding is pending. And significantly, the assets of *both* Assignors – NY Metro and KRBI – will be administered in that proceeding.

As noted above, MRBI questions whether the ABC Proceeding and the Assignee are adequate to this task and whether the APA and Delta's "stalking horse" bid are fair and transparent. But MRBI has not supported those arguments with evidence that shows – or even suggests – that the ABC Proceeding or the Assignee are inadequate.

In this proceeding, to be sure, a Chapter 7 trustee would similarly conduct an orderly liquidation of KRBI's assets. He or she would likely retain professionals, and this Court would oversee the process. Like the ABC Proceeding, it would be fair and transparent. But unlike the ABC Proceeding, there is presently no trustee in place, no professionals have yet been retained, and no agreement that assures a minimum recovery has been entered into. And significantly, *only the assets of KRBI – not the combined assets of NY Metro and KRBI –* would be within the scope of the proceeding. Even if those assets could somehow be brought within this Chapter 7

case, that litigation path is long and far from certain.  Taken together, these considerations show that the economy and efficiency of administration favor the ABC Proceeding, not this involuntary Chapter 7 bankruptcy case.

Accordingly, this Court finds that this factor weighs in favor of abstention.

<u>Whether Another Forum Is Available To Protect the Interests of Both Parties or There Is Already a Pending Proceeding in a State Court</u>

The second factor identified in *In re Paper I Partners* is whether there is another forum available that can protect the interests of both parties, and additionally, whether there is already a proceeding pending in state court.  *In re Paper I Partners,* 283 B.R. at 679.

Here, the record shows that at the time this involuntary bankruptcy case was commenced, KRBI and NY Metro, as Assignors, had already commenced an assignment for the benefit of creditors in Queens Supreme Court – the ABC Proceeding – and that proceeding was stayed by the commencement of this case.  That proceeding provides an available and adequate forum to protect the interests of MRBI, KRBI, NY Metro, and their creditors.

Accordingly, this Court finds that this factor weighs in favor of abstention.

<u>Whether Federal Proceedings Are Necessary To Reach a Just and Equitable Solution</u>

The third factor identified in *In re Paper I Partners* is whether federal proceedings – here, this involuntary Chapter 7 bankruptcy case – are necessary to reach a just and equitable solution.  *In re Paper I Partners,* 283 B.R. at 679.

Here, as noted above, the record shows that at the time this involuntary bankruptcy case was commenced, KRBI and NY Metro, as Assignors, had already commenced the ABC Proceeding in Queens Supreme Court.  In that proceeding, the combined assets of the Assignors NY Metro and KRBI will be liquidated by the Assignee for the benefit of creditors, under the supervision of the court.  And while a Chapter 7 trustee plainly has the ability to undertake an

orderly liquidation of a debtor's assets, MRBI has not shown that there is any reason to doubt the adequacy to that task of the ABC Proceeding and the Assignee, or the quality of the court's supervision in that proceeding. That is, it does not appear that federal proceedings are necessary to reach a just and equitable solution in this situation.

Accordingly, this Court finds that this factor weighs in favor of abstention.

<u>Whether There Is an Alternative Means of Achieving the Equitable Distribution of Assets</u>

The fourth factor identified in *In re Paper I Partners* is whether alternative means exist to achieve the equitable distribution of assets. *In re Paper I Partners,* 283 B.R. at 679.

Here again, as noted above, the record shows that at the time this involuntary bankruptcy case was commenced, KRBI and NY Metro, as Assignors, had already commenced the ABC Proceeding in Queens Supreme Court, where the combined assets of the Assignors NY Metro and KRBI will be liquidated by the Assignee for the benefit of creditors, under the supervision of the court. That is, there is plainly an alternative means of achieving the equitable distribution of KRBI's assets, through the ABC Proceeding.

Accordingly, this Court finds that this factor weighs in favor of abstention.

<u>Whether KRBI and the Creditors Are Able To Work Out a Less Expensive Out-Of-Court Arrangement Which Better Serves All Interests in the Case</u>

The fifth factor identified in *In re Paper I Partners* is whether KRBI, the alleged debtor here, and the creditors are able to reach an out-of-court resolution which better serves all of the interests in the case. *In re Paper I Partners,* 283 B.R. at 679. Depending on the facts and circumstances, this consideration could weigh in favor of abstention if the parties were on the threshold of such a resolution, or could weigh against abstention if the parties saw the bankruptcy process as likely to lead to an out-of-court agreement.

Here, the record shows that an out-of-court resolution among these parties is highly unlikely.  The path to this courthouse has already taken MRBI and KRBI through the District Court Action in New Jersey which was dismissed in response to a dispositive motion for lack of subject matter jurisdiction, a two-week jury trial in New Jersey Superior Court, the contested ABC Proceeding in Queens Supreme Court, and now this contested involuntary Chapter 7 bankruptcy case.

Of course, settlements are sometimes achieved in circumstances where the prospects seem remote.  And bankruptcy court is often the setting where a resolution that seemed unthinkable in other forums can occur.  But this record does not presently point in the direction of an out-of-court consensual resolution, nor has either MRBI or KRBI identified any reason to view this Chapter 7 bankruptcy case as likely to advance such an agreement.

Accordingly, this Court finds that this factor weighs neither in favor of nor against abstention.

Whether the Non-Federal Insolvency Has Proceeded So Far that it Would Be Costly and Time Consuming To Start Afresh with the Federal Bankruptcy Process

The sixth factor identified in *In re Paper I Partners* is whether the "non-federal insolvency" – here, the ABC Proceeding – has proceeded so far that it would be unproductively costly and time consuming to start afresh in this bankruptcy case.  *In re Paper I Partners,* 283 B.R. at 679.

Here, the record shows that the ABC Proceeding has its origins in an assignment for the benefit of creditors executed by NY Metro and KRBI on August 5, 2019.  Soon thereafter, the Assignee signed the ABC, retained a financial advisor and counsel.  And on September 19, 2019, the Assignee commenced the ABC Proceeding in Queens Supreme Court by filing a petition and an application for an order to show cause to move those proceedings forward.  *See* KRBI Mot. at

4.  The OSC Request seeks to commence the ABC Proceeding, to authorize the Assignee to post a provisional bond and retain professionals including counsel and a financial advisor, to fix a date and approve notice for filing proofs of claims, and to approve bidding and sales procedures for the assets of the Assignors.  Notably, MRBI has been an active participant in those proceedings.

About a month later, on October 22, 2019, MRBI commenced this involuntary bankruptcy case, and at that point, all activity in the ABC Proceeding was stayed.  That is, on the one hand, the ABC Proceeding is in a relatively early stage.  But on the other, but for the filing of this involuntary bankruptcy case, it appears that the ABC Proceeding would have proceeded significantly down the path of an orderly liquidation of the Assignors' assets for the benefit of their creditors.

Accordingly, this Court finds that this factor weighs to some extent in favor of abstention.

Whether the Purpose for Which Bankruptcy Jurisdiction Has Been Sought Favors Abstention

The seventh factor identified in *In re Paper I Partners* is the purpose for which bankruptcy jurisdiction has been sought – that is, why has the petitioning creditor sought to avail itself of the bankruptcy court's jurisdiction, rather than some other pathway to a resolution of the situation.  *In re Paper I Partners,* 283 B.R. at 679.

Here, the record shows that while MRBI urges that this Chapter 7 bankruptcy case is necessary to address the infirmities and conflicts in the ABC Proceeding, the Assignee, and the proposed acquisition of the assets of NY Metro and KRBI by Delta, the "stalking horse" bidder, it has not come forward with persuasive argument or evidence to support its position.  To the contrary, the record shows that the ABC Proceeding will be conducted by the Assignee as a fiduciary of the creditors and overseen by the Queens Supreme Court, and that the sale of the

assets of NY Metro and KRBI will take place at a public auction.  The purchase price in the APA with Delta as the "stalking horse" bidder is subject to higher and better offers, and establishes a floor, not a ceiling, for a recovery.  While MRBI's purpose in seeking bankruptcy jurisdiction is not improper, it is also not persuasive.

Accordingly, this Court finds that this factor weighs in favor of abstention.

*          *          *

For these reasons, and based on the entire record, the Court finds that KRBI has shown that this Court should abstain in this involuntary bankruptcy case pursuant to Bankruptcy Code Section 305(a).

### *Whether KRBI Has Shown that this Court Should Abstain Pursuant to Judiciary Code Section 1334(c)*

The Court next considers whether KRBI has shown that this Court should abstain in this bankruptcy case pursuant to Judiciary Code Section 1334(c).  Here as well, courts undertake a case-by-case and fact-specific analysis to determine whether abstention is warranted "in the interest of justice, or in the interest of comity with State courts or respect for State law."  28 U.S.C. § 1334(c)(1).  And here as well, the question of abstention under Section 1334(c)(1) is committed to the sound discretion of the bankruptcy court.  *See In re Strathmore Group, LLC,* 522 B.R. 447, 457 (Bankr. E.D.N.Y. 2014) (stating that permissive abstention lies within the sound discretion of the bankruptcy court).  Here, the Court looks to the factors identified in *In re Residential Capital, LLC* ("*Res Cap"*) to consider this question.

### Whether the Effect or Lack Thereof on the Efficient Administration of the Bankruptcy Estate Favors Abstention

The first factor identified by the bankruptcy court in *Res Cap* is the effect that this Court's abstention would have on the efficient administration of the bankruptcy estate. *In re Residential Capital, LLC,* 488 B.R. at 577.

Here, as noted above, the record shows that the ABC Proceeding was commenced prior to this involuntary bankruptcy case, an Assignee is in place, professionals have been retained, and he has requested approval to commence the orderly liquidation of the assets of NY Metro and KRBI, the Assignors. An asset purchase agreement has been entered into with a "stalking horse" bidder, and it is subject to higher and better offers at a public auction that will be overseen by the Queens Supreme Court, where the ABC Proceeding is pending. And the assets of *both* Assignors – NY Metro and KRBI – would be administered in that proceeding.

Here, a Chapter 7 trustee would be tasked with the orderly liquidation of KRBI's assets. But it is far from clear that NY Metro's assets would be part of this case, and it is similarly far from clear how this proceeding would be more efficient in bringing about the prompt liquidation of the bankruptcy estate's assets for the benefit of the creditors.

Accordingly, this Court finds that this factor weighs in favor of abstention.

<u>Whether the Extent to Which State Law Issues Predominate Over Bankruptcy Issues Favors Abstention</u>

The second factor identified by the bankruptcy court in *Res Cap* is the extent to which issues of state law predominate. *In re Residential Capital, LLC,* 488 B.R. at 577.

Here, the record shows that the issues to be addressed are overwhelmingly, and perhaps entirely, questions of state law. MRBI seeks to enforce its Judgment that was entered in New Jersey Superior Court on state law claims following a two-week jury trial. It has raised questions in the ABC Proceeding that arise under New York's Debtor and Creditor Law. But it has not identified significant or predominant bankruptcy issues that could be better addressed in a

bankruptcy court than in Queens Supreme Court, and the record does not suggest that such issues exist.

Accordingly, this Court finds that this factor weighs in favor of abstention.

<u>Whether the Difficulty or Unsettled Nature of the Applicable State Law Favors Abstention</u>

The third factor identified by the bankruptcy court in *Res Cap* is the difficulty or unsettled nature of the applicable state law.  *In re Residential Capital, LLC,* 488 B.R. at 577.

Here, the record shows that the applicable state law is neither difficult nor unsettled.  Of course, state courts are more familiar with assignments for the benefit of creditors, just as bankruptcy courts are more familiar with Chapter 7 bankruptcy cases.  In both contexts, the applicable law should provide a straightforward framework for the liquidation of the assets of KRBI (and, in the ABC Proceeding, NY Metro), for the benefit of the creditors.

Accordingly, this Court finds that this factor weighs neither in favor of nor against abstention.

<u>Whether the Question of Comity Favors Abstention</u>

The fourth factor identified by the bankruptcy court in *Res Cap* is the question of comity. *In re Residential Capital, LLC,* 488 B.R. at 577.

Here, the record shows that there is a pending proceeding in Queens Supreme Court, the applicable law is predominantly New York state law, and any needed relief can be obtained in that forum.  In addition, more complete relief is available in the ABC Proceeding, where two entities – NY Metro and KRBI – not just one – are the subjects of the proceeding.  New York state courts are experienced and expert in overseeing these proceedings, and MRBI has not identified any persuasive grounds for this Court to displace that proceeding with a Chapter 7 proceeding in this Court.

Accordingly, this Court finds that this factor weighs in favor of abstention.

Whether the Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case Favors Abstention

The fifth factor identified by the bankruptcy court in *Res Cap* is the degree of relatedness or remoteness of the proceeding to the main bankruptcy case. *In re Residential Capital, LLC,* 488 B.R. at 577.

Here, the record shows that the ABC Proceeding and this Chapter 7 bankruptcy case are related in a very particular way. The ABC Proceeding is an alternative path, in a different forum, to the objective of conducting a court-supervised orderly liquidation of KRBI's assets. It is hard to see how the ABC Proceeding could move forward with the liquidation of the assets of the Assignors NY Metro and KRBI if this Chapter 7 bankruptcy case also proceeds. And it is similarly difficult to conceive of how the same measure of relief could be achieved in this Chapter 7 case, where just one, but not the other, of the Assignors is an alleged debtor.

Accordingly, this Court finds that this factor weighs in favor of abstention.

Whether There Is a Right to a Jury Trial

The sixth factor identified by the bankruptcy court in *Res Cap* is the existence of the right to a jury trial. *In re Residential Capital, LLC,* 488 B.R. at 577.

Here, the record shows that at this stage in these long-running proceedings, MRBI has had the benefit of a jury trial in the New Jersey Superior Court, and now seeks to enforce its Judgment. But neither MRBI nor KRBI presently seeks to assert a right to a trial by jury, in these proceedings or elsewhere.

Accordingly, this Court finds that this factor weighs neither in favor of nor against abstention.

Whether There Is Prejudice to the Involuntarily Removed Defendants

The seventh and final factor identified by the bankruptcy court in *Res Cap* is the question of prejudice to the involuntarily removed defendants – here, in effect, KRBI as the involuntary alleged Chapter 7 debtor and assignor in the ABC Proceeding.  *In re Residential Capital, LLC,* 488 B.R. at 577.

Here, the record shows that KRBI, together with NY Metro, seeks the orderly liquidation of its assets through the ABC Proceeding.  It prefers that forum and procedure, where more complete relief can be obtained for the creditors of both entities.  Not only KRBI, but also NY Metro and their creditors would be prejudiced if that proceeding were partially displaced in favor of this Chapter 7 bankruptcy case of just KRBI.  And while MRBI challenges that proceeding as "unconscionable," unfair, and lacking in transparency, it has not come forward with persuasive argument or evidence in support of those assertions.

Accordingly, this Court finds that this factor weighs in favor of abstention.

*                *                *

For these reasons, and based on the entire record, the Court finds that KRBI has shown that this Court should abstain in this involuntary bankruptcy case pursuant to Judiciary Code Section 1334(c).

**Conclusion**

For the reasons set forth herein and as stated in the bench ruling of this Court entered on March 30, 2020, KRBI's Motion To Dismiss or for Abstention is granted and this case is dismissed pursuant to Bankruptcy Code Section 707.

In the alternative, and for the reasons set forth herein and as stated in the bench ruling of this Court entered on March 30, 2020, KRBI's Motion To Dismiss or for Abstention is granted

and this Court will abstain from proceeding pursuant to Bankruptcy Code Section 305 and Judiciary Code Section 1334(c).

An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
      **March 31, 2020**

                                                    _____
                                                         **Elizabeth S. Stong**
                                                    **United States Bankruptcy Judge**